**Alton FRANKLIN and Claude Lee Franklin, Administrators of the Estate of George Franklin, Plaintiffs/Appellants,**

**v.**

**COLLINS CHAPEL CONNECTIONAL HOSPITAL, Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 24, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 12, 1985.

Joel Porter of Burch, Porter & Johnson, Memphis, for plaintiffs/appellants.

Leo Bearman, Jr. and Sam Blair, Jr., of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendant-appellee.

TOMLIN, Judge.

This appeal involves the application of the doctrine of *res ipsa loquitur*. Plaintiffs, administrators of the estate of the decedent, George Franklin, (hereafter "plaintiffs") brought suit against the Collins Chapel Connectional Hospital, a/k/a Collins Chapel Health Care Center (hereafter "defendant" or "nursing home") for the wrongful death of their decedent, alleging that thermal burns incurred by decedent while a patient in the nursing home contributed to his death. The case was tried to a jury in the Circuit Court of Shelby County and resulted in a verdict for defendant. Plaintiffs present three issues by this appeal:

(1) that the trial court erred in refusing to instruct the jury on *res ipsa loquitur;* (2) that the trial court erred in excluding certain opinion testimony by one of decedent's treating doctors as to whether thermal burns ordinarily happen to a patient in a nursing home in the absence of negligence; and (3) that there was no material evidence to support the jury's verdict. Inasmuch as we reverse the trial court and remand the case for a new trial, based upon the court's failure to charge the jury on *res ipsa loquitur,* the third and final issue is pretermitted.

Franklin, age 82, was admitted to the nursing home in February, 1980. He suffered from, among other things, senility, high blood pressure, and incontinence, both as to bowels and bladder. At the time of the alleged occurrence of the injuries sued for he was taking a multitude of drugs. On the morning of November 2, 1980, Franklin was given a bath by the orderly on duty. After being bathed and dressed, the orderly placed Franklin in a chair near the nurses' station and secured him with lawful restraints that had been prescribed by Franklin's doctor. Some two hours or so later, when the orderly returned to check on Mr. Franklin and to get him ready for his lunch he discovered that, due to his incontinency, Mr. Franklin had wet his pants. When he began to clean him up the orderly noticed blisters on Franklin's left leg, whereupon he contacted the LPN on duty. Upon coming to Franklin's aid the LPN observed profuse perspiration, shaking, and elevated blood pressure. She also observed blisters on Franklin's left leg and hand. The patient was transported immediately by ambulance to Methodist Hospital.

At the hospital emergency room Franklin was examined by a Dr. Witherington, an internist, who found blisters on his buttocks and leg region that were consistent with burns. Dr. Witherington's first impression was that the condition resembled an allergic-type reaction. While he considered three causes of the burns, he came to the conclusion that they were thermal burns. In addition, a skin biopsy ordered by Dr. Witherington found the skin specimen to be consistent with a thermal burn injury.

Franklin was also treated by Dr. Owens, a surgeon, who stated that upon examining Franklin he found burn injuries on his left arm, back, and both legs. He was of the opinion that the injuries suffered by Frank-

lin were thermal burns caused by heat from air, liquid or solid. His final diagnosis was first, second and third degree thermal burns. Neither doctor was able to obtain a history from Franklin, as he was semi-comotose when he was brought into the hospital and never improved sufficiently to give a history as to the cause of his injuries.

Franklin was also observed in the emergency room of the hospital by Sergeant Bolden of the Memphis Police Department, who was assigned to investigate the incident. He testified that he observed blisters on Franklin's left hand, as well as on the left side of his body. Franklin remained in the hospital from November 2, 1980, until January 12, 1981. On that date he was discharged to another nursing home but was returned to the hospital on January 28, 1981, where he died on February 6, 1981. While Franklin's death was a result of numerous factors, there was medical testimony to the effect that the burn injury of November 2, 1980 contributed to his death.

Plaintiffs' complaint alleged that Franklin suffered burns while in the care and custody of defendant, and that they were caused when defendant's employee placed him in a tub of hot water, thereby scalding him. They allege seven specific acts of negligence on the part of defendant and its employees. The acts of negligence charged to defendant were set forth with specificity in plaintiffs' complaint as follows:

(a) In placing plaintiffs' decedent, George Franklin in scalding hot water which was sufficiently hot to cause second and third degree burns;

(b) In permitting George Franklin, who was in the care, custody and control of defendants, to sustain second and third degree burns;

(c) In failing to secure prompt emergency treatment for George Franklin after the said burns had been sustained;

(d) In tying George Franklin to a chair for approximately two hours after the said burns had been inflicted upon him;

(e) In maintaining plumbing which permitted hot water temperatures sufficient to inflict second and third degree burns;

(f) In failing to discover the aforesaid burns within a reasonable time after same had been inflicted;

(g) In failing to exercise reasonable and ordinary care under the circumstances.

Their complaint also seeks to invoke the doctrine of *res ipsa loquitur*, stating that the burns constituted an accident that does not occur in a nursing home absent negligence, and that the deceased was in defendant's sole care, custody and control.

## I. APPLICABILITY OF RES IPSA LOQUITUR.

Clearly, plaintiffs' paramount issue in this appeal is whether or not the trial court was in error in failing to charge the jury on the doctrine of *res ipsa loquitur*. For us to make a determination as to whether or not the trial court erred in this regard requires us to review the facts in some detail. A review of the record establishes that at the time of the occurrence Mr. Franklin, suffering from senility, high blood pressure and incontinence, was a patient in defendant's nursing home. He had to be secured to chairs by restraints when left alone. Mr. Franklin was in the exclusive care, custody, and control of defendant. The record also reveals that on the morning of November 2, 1980, he was given a bath by an employee of the defendant, and that an hour or two later blisters were observed on his left hand, left side, left leg and foot and right leg by defendant's orderly, floor nurse, and a police officer who investigated the incident.

Two treating physicians testified that they observed burns on various parts of Franklin's body, generally as above described, and in their opinion these burns were thermal burns—that is, burns caused by heat from a source of air, liquid or a solid. The doctors' testimony was supported by a pathologist's report. The medical testimony as to the nature and source of Franklin's burns was uncontradicted.

Defendant's orderly testified that he did in fact give Franklin a bath on that Sunday morning, but that prior to placing him in the bath he tested the water with a thermometer; the water registered about 80 degrees. After placing Franklin in the water, the orderly had his hands and arms in the water up to his elbows and he suffered no burns. The orderly further testified that Franklin made no protest at that time that the bath water was causing him any discomfort. The director of the nursing home testified that the thermostat for the hot water heaters was set at 95–98 degrees, and that the thermostats were so altered that this setting could not be changed. On cross-examination defense counsel elicited testimony from one of plaintiff's doctors that the burns suffered by Franklin had to be caused by a heat source hotter than 95 degrees. The police officer who conducted the investigation testified that he went to the nursing home and that upon turning on the hot water into the tub he tried to hold his hand under it but it was scalding and steaming, and he could leave his hand under the water for only a few seconds.

Three of Franklin's adult children testified that they were with their father in the nursing home on either Friday or Saturday prior to the incident on Sunday, and that they had a chance to observe his hands and feet and saw no signs of blisters. On the other hand, the nursing home LPN testified that on October 31st she observed a blister on Franklin's left heel and made a note of this in his chart. Unfortunately, Franklin himself was unable to provide any input as to the cause of the blisters, as he was in a dazed and confused state when this condition was first observed by defendant's employees on November 2nd, and he later became semi-comotose or worse, never recovering to the point where he could describe the events of that fateful day.

A thorough consideration of the *res ipsa* doctrine can be found in the case of *Sullivan v. Crabtree*, 36 Tenn.App. 469, 258 S.W.2d 782, *cert. denied* (1953), wherein the doctrine is stated to be as follows:

"[W]here the thing [causing the harm] is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." *Erle, C.J., Scott v. London and St. Katherine Docks Co.* (1865), 3 H. & C. 596, 159 Eng. Reprint 665, 667.

This statement has been accepted in our cases. *Id.* at 783–84.

Noting that the rule of *res ipsa* cannot be molded into a fixed formula, the court said:

The only generalization that can be safely made is that, in the words of the definition of *res ipsa loquitur*, it affords "reasonable evidence," in the absence of an explanation by defendant, that the accident arose from this negligence.

The weight or strength of such "reasonable evidence" will necessarily depend on the particular facts of each case, and the cogency of the inference of negligence from such facts may of course vary in degree all the way from practical certainty in one case to reasonable probability in another.

*Id.* at 785.

In the earlier case of *Lewis v. Casenburg*, 157 Tenn. 187, 7 S.W.2d 808 (1928), our Supreme Court quoted with approval the following language from *Sweeney v. Erving*, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913).

"In our opinion, res ipa (sic) loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient, that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur,

where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

*Id.* at 811.

■ Defendant contends that the doctrine of *res ipsa loquitur* should not apply in this case for several reasons. First, he states that *res ipsa loquitur* is inappropriate for medical malpractice cases, and even if it would be appropriate in this case that plaintiffs waived their rights to rely upon the *res ipsa* doctrine when they plead and sought to prove specific acts of negligence. In the first instance defendant relies upon an opinion by Judge Nearn of this Court, styled *German v. Nichopoulos*, 577 S.W.2d 197 (Tenn.Ct.App.1978) *cert. denied* (1979). We have no finding by the trial court that this is a medical malpractice case, and we think it would be stretching a point to consider it as such. The occurrence took place in a nursing home where custodial care is given aged and infirm persons. The occurrence complained of here is a simple bath given by an orderly to an infirmed person burdened with senility and other health problems. We do not believe that we can elevate this case to the status of a medical malpractice case.

■ In support of its second ground for opposition to the application of this rule, defendant relies upon the case of *Brown v. University Nursing Home, Inc.*, 496 S.W.2d 503 (Tenn.Ct.App.1972) *cert. denied* (1973), wherein the Court stated that "the doctrine does not generally apply where specific acts of negligence are alleged and where evidence in support of such allegations is presented." *Id.* at 509. *See also Hughes v. Hastings*, 225 Tenn. 386, 469 S.W.2d 378, 382–83 (1971). As this Court noted in *Greer v. Lawhon*, 600 S.W.2d 742 (Tenn.Ct.App.) *cert. denied* (1980), it is not the mere pleading of negligence that bars one from relying on *res ipsa;* rather it is the introduction of evidence in support of these allegations of negligence:

> By alleging both general negligence and specific acts of negligence in her com-

plaint plaintiff did not waive the right to rely upon the doctrine of *res ipsa loquitur.* It is well settled law in this state in a case where the doctrine of *res ipsa loquitur* is applicable the plaintiff does not lose the benefit of it by alleging specific acts of negligence which she fails to prove.

*Id.* at 744–45 (citations omitted).

■ From our reading of this record, while it is clear that the plaintiffs did allege some six specific acts of negligence, we are of the opinion that they failed to prove any negligence on the part of defendants. Absent the applicability of the *res ipsa* doctrine, if the jury had not returned a verdict for the defendant and if the issue had been properly presented to us by an appeal, we would have been constrained to hold that the trial court should have granted defendant's motion for a directed verdict in light of the proof. As we view it, plaintiffs' proof that the water from the hot water faucet in defendant's bathroom was scalding if only hot water was run was plaintiffs' attempt to define the instrumentality that caused the injury, the injury having been determined by plaintiffs' physicians to be thermal burns. Granted this is in the nature of circumstantial evidence, but under our case law, the specific instrumentality to be held responsible for the injury complained of is not required to be proven by direct evidence but may be proven by circumstantial evidence. *Olswanger v. Funk*, 63 Tenn.App. 201, 470 S.W.2d 13 *cert. denied* (1970). *See also Southern Gas Corp. v. Brooks*, 50 Tenn.App. 1, 359 S.W.2d 570 *cert. denied* (1961).

■ From our review of this record we are of the opinion that the injury to Mr. Franklin complained of by plaintiffs—thermal burns—does not ordinarily occur absent negligence on the part of the person—defendant—who had the instrumentality used—the bath—in its exclusive control. The record having established these two elements, plaintiffs were entitled to an instruction to the jury as to the doctrine of *res ipsa loquitur* and its applicability.

As the cases cited above so hold, *res ipsa* will take plaintiff's case to the jury, but "merely permits the jury to choose the inference of defendant's negligence in preference to other permissible or reasonable inferences." *Sullivan v. Crabtree,* 258 S.W.2d at 785.

As this Court observed in *Southern Gas Corp. v. Brooks,* 359 S.W.2d at 578:

> "The general rule for all cases of circumstantial evidence—both ordinary cases and res ipsa loquitur cases—is that to make out his case, plaintiff does not have to eliminate all other possible causes or inferences than that of defendant's negligence; but it is enough if the evidence for him makes such negligence more probable than any other cause. (citing cases)" quoting *Roberts v. Ray,* 45 Tenn.App. 280, 322 S.W.2d 435 (1958).

Given the proper instruction, the jury in this case is free to determine the weight the inference allowed under *res ipsa* is to be given, as well as considering defendant's explanations as to the cause of Mr. Franklin's blisters. *See Summit Hill Associates v. Knoxville Utilities Board,* 667 S.W.2d 91 (Tenn.Ct.App.1983) *cert. denied* (1984).

## II. EXCLUSION OF EXPERT TESTIMONY.

The second and final issue of plaintiffs which we will address is that the trial court erred in excluding as evidence an opinion given by Dr. Witherington in reply to a question posed by plaintiffs' counsel. The question and answer are as follows:

> Q. Doctor, I want you to assume that George Franklin was in the care, custody and control of the Collins Chapel Health Care Center at the time that he sustained the burns which you have previously described. I want you to assume further that they are thermal burns, as you have testified.
>
> Do you have an opinion as to whether such an injury can normally or customarily occur if the persons rendering such custodial care exercise due care?

> MR. POTTER: Let me object to that question.
>
> Q. (By Mr. Porter) Subject to the objection, do you have an opinion?
>
> A. These injuries should not occur.

The trial judge sustained defendant's objection to the above testimony on the ground that the answer invaded the province of the jury. Our Supreme Court, in *City of Columbia v. C.F.W. Const. Co.,* 557 S.W.2d 734 (Tenn.1977), eliminated this principle as a basis for excluding expert testimony. Following Federal Rules of Evidence, Rule 704, the Court stated that "in our view the better rule is that an expert's opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of facts, so long as it is helpful to the court." *Id.* at 742.

Although the trial court may have excluded this testimony for what appears to be the wrong reason, we think it was correct in so doing. While Dr. Witherington is qualified as a medical doctor, there was no predicate laid to show that he had any qualifications whatsoever as an expert in nursing home procedure or nursing home care. Without those qualifications of Dr. Witherington having been shown, in our opinion, he is not an "expert" who should be permitted to testify as to what does or does not constitute negligence in the operation of a nursing home.

For the reasons above stated, the judgment of the trial court is reversed, and this cause is remanded to the Circuit Court of Shelby County for a new trial in accordance with the principles set forth in this opinion. Costs in this cause are taxed to defendant, for which execution may issue, if necessary.

NEARN, P.J., and CRAWFORD, J., concurs.