# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 10, 2010 Session

## MELINDA LONG, as Administrator of the Estate of Opal Hughes, v. HILLCREST HEALTHCARE - WEST, et al.

**Appeal from the Circuit Court for Knox County**
**No. 3-119-09     Hon. Wheeler Rosenbalm, Judge**

**No. E2009-01405-COA-R3-CV - Filed April 16, 2010**

Opal Hughes sustained injuries while in the care of defendant Hillcrest Healthcare - West, and her administrator brought this action for damages.  Defendant moved to dismiss on the grounds that plaintiff's complaint was a complaint for malpractice against defendant. Plaintiff argued that the complaint was for simple negligence, and the Trial Court held the complaint was for medical malpractice and since statutory requirements for filing a medical malpractice complaint had not been met, dismissed the case.  On appeal, we affirm.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., joined, and CHARLES D. SUSANO, JR., J., concurred in part, dissented in part and filed an opinion.

Beecher A. Bartlett and William J. Carver, Knoxville, Tennessee, for the appellant, Melinda Long.

Wayne A. Kline and E. Michael Brezina, III., Knoxville, Tennessee, for the appellee, Hillcrest Healthcare - West and Hillcrest Healthcare, LLC.

## OPINION

Plaintiff, Melinda Long, as administrator of the Estate of Opal Hughes, deceased, filed this Wrongful Death action against defendant, alleging that Ms. Hughes was a resident of

Hillcrest West on Middlebrook Pike in Knoxville, and that she was paralyzed on her right side from a stroke and required special assistance when being moved. Plaintiff alleged that defendants had posted a sign outside Ms. Hughes' room stating that a special lift had to be used to move her and that a special chair/wheelchair had to be employed.

Plaintiff alleged that on March 20, 2008, a member of defendants' staff took Ms. Hughes from her bed to shower, and did not use the lift or special wheelchair or shower chair. Plaintiff alleged that this staff member failed to follow safety protocols, and dropped Hughes during the shower, causing immediate swelling in her right knee. Plaintiff alleged that no one notified Hughes' family of the incident, and that a third party who was there visiting a family member saw the swelling in Hughes' knee and called her daughter, the plaintiff herein. Plaintiff alleged that when she arrived at Ms. Hughes' room, Ms. Hughes was in great pain and was crying, and showed bruises. Plaintiff alleged that Hughes was taken to the emergency room, where doctors determined that she had a broken femur, but advised against surgery due to her age.

Plaintiff alleged that defendants failed to follow Hughes' doctors' orders, and this caused her to suffer additional pain, and that Hughes' condition deteriorated and she died as a result of her injuries on May 12, 2008.

Finally, plaintiff alleged that defendants' negligence and recklessness was the proximate cause of Hughes' injuries and ultimately, her death, and that defendants' actions were outrageous and/or reckless, such that punitive damages were appropriate.

Defendants filed a Rule 56 Statement of Material Facts, and stated that on March 16, 2009, plaintiff's counsel sent notice to defendants' counsel that plaintiff intended to file a medical malpractice claim. Defendants stated that plaintiff's complaint was filed on that same day. Defendants filed a Motion to Dismiss or Motion for Summary Judgment, stating that since the medical malpractice statute required plaintiff to give defendants notice 60 days before filing the lawsuit, and this requirement was not met, the statute mandated dismissal of plaintiff's complaint.

Plaintiff filed a response to defendants' Rule 56 statement, admitting that she sent notice of her intent to file a malpractice claim on March 16, 2009. Plaintiff admitted that they filed a complaint on that same day, but stated that said complaint asserted a cause of action for wrongful death arising out of common law negligence, rather than malpractice. Plaintiff also filed a Response to defendants' motion, asserting that the complaint did not state a claim for medical malpractice, but rather stated a claim of common law negligence.

The Court entered an Order, and found that plaintiff's complaint sounded in medical

malpractice, and since plaintiff failed to comply with the requirements of Tenn. Code Ann. §29-26-121(a), summary judgment was appropriate. This appeal ensued.

The issue on appeal is whether the Trial Court erred in holding that the plaintiff's complaint stated a medical malpractice claim.

Plaintiff argues the Trial Court erred in ruling that her complaint sounded in medical malpractice, as it only alleged common law negligence. Defendants argue that the Trial Court's ruling was correct, and rely upon the case of *Johnsey v. Northbrooke Manor, Inc., et al.,* 2009 WL 1349202 (Tenn. Ct. App. May 14, 2009).

In *Johnsey,* this Court was asked to determine whether the plaintiff's claims sounded in medical malpractice, when the decedent was allegedly injured while he was being bathed by a staff member of the defendant nursing home facility. *Id.* We stated that the medical malpractice statute "may extend to acts of non-physicians, such as nurses, when they are involved in the medical treatment of a patient." *Id., citing Gunter v. Lab. Corp. of America,* 121 S.W.3d 636 (Tenn. 2003). *Gunter* set forth the analysis for distinguishing between an ordinary negligence claim and a medical malpractice claim as follows:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

*Gunter*, at p. 641.

This Court has also made this distinction by looking at "whether the decision, act, or omission complained of required the assessment of a patient's medical condition and whether the decision, act, or omission required a decision based upon medical science, specialized training or skill." *Conley v. Life Care Ctrs. of America, Inc.,* 236 S.W.3d 713, 729 (Tenn. Ct. App. 2007). "Acts or omission complained of in a medical malpractice action should involve matters of the medical arts and/or sciences that require specialized skills not ordinarily possessed by a lay person." *Id.*

Examples of cases where the court found that the claim sounded in medical malpractice include a case where the plaintiff went to the emergency room complaining of swollen, painful legs, and after the physician examined her, she was left alone in the room to get dressed. *Graniger v. Methodist Hospital Healthcare Systems, Inc.*, 1994 WL 496781

(Tenn. Ct. App. Jan. 3, 1995). When the plaintiff tried to get off the examining table to get dressed, she fell and broke her wrist. *Id.* This Court found that the plaintiff's claim was one of medical malpractice, because the question of whether plaintiff needed assistance or should not have been left alone to dress was based on her medical condition. *Id.*

In *McBee v. HCA Health Services of Tennessee, Inc.*, 2000 WL 1533000 (Tenn. Ct. App. Oct. 18, 2000), the plaintiff had a hysterectomy and fell two days later when the nurse tried to get her up, fracturing her ankle. This Court found that the plaintiff's claim was one for medical malpractice, because the assessment of her ability to get up and the choice of what type of assistance was needed involved specialized skill and training not ordinarily possessed by lay persons. *Id.* Another similar result was reached in *Cooksey v. HCA Health Services of Tennessee, Inc.,* 2001 WL 1328539 (Tenn. Ct. App. Oct. 30, 2001), wherein the plaintiff alleged that her shoulder was injured following back surgery when two nurses attempted to move her in bed. This Court found that her claim was for medical malpractice because "[t]he proper way to move or turn a patient who has undergone a serious back operation is not within the ken of ordinary laypersons." *Id.*

In the *Johnsey* case, this court determined that where the plaintiff alleged that the decedent was dropped or allowed to fall while bathing, would sound in malpractice because the type of care/support the patient required while bathing was based on medical science and/or specialized training, and required the assessment of the patient's medical condition. *Id.*, at p. 13. The Court went on to state that "[w]e cannot say that the proper method of transporting and bathing a patient suffering from Parkinson's Disease and dementia, who, consequently, requires antipsychotic medication, may become combative, and has difficulty standing, can be assessed 'based on common everyday experiences.'" *See Johnsey, supra, citing Conley.* This Court also stated that simply because the actor may have been an aide or nursing assistant, this did not take the claim out of the realm of medical malpractice, because many cases had recognized that allegations against nurses, aides, and technicians involved in a patient's care constituted claims for medical malpractice. *Id.*

Examples of cases which this court found did not sound in medical malpractice are: a case where the plaintiff was injured when she was recovering from surgery and a technician tried to remove an orthopedic suspension bar from her bed that was not being used, accidentally hitting her in the head; and a case where a patient was scalded with bath water that was too hot. *See Peete v. Shelby County Health Care Corp.,* 938 S.W.2d 693 (Tenn. Ct. App. 1996); *Franklin v. Collins Chapel Conn. Hosp.*, 696 S.W.2d 16 (Tenn. Ct. App. 1985). This Court found that the claims in these cases sounded in ordinary negligence because the act/omission did not involve a matter of medical science not ordinarily possessed by lay persons. *Id.*

In this case, plaintiff's complaint alleged that her mother's condition (partial paralysis following a stroke) required special handling when she was moved, involving a special type of lift, and also the use of a special wheelchair and shower chair for bathing. Plaintiff also claimed that the hospital doctor's orders were not followed by defendants when caring for her mother. Clearly, based on the above analyses, we conclude that plaintiff's claims sound in medical malpractice, because they involve assessment of Ms. Hughes' medical condition, and specialized knowledge and/or skill in the handling of Ms. Hughes based on her medical condition. As pointed out by the defense, this case is very similar to the *Johnsey* case, and the proper method of handling Ms. Hughes during her bath/shower could not be assessed based on "common everyday experiences", as was true in Johnsey. Also, contrary to plaintiff's argument, it does not matter whether the act/omission was done by a doctor, nurse, aide, technician, etc. *Id.* The act of "dropping" someone when considered in isolation could be simple negligence, but when the duty of care and well-being of the patient arises from professional care standards the violation of that duty is medical malpractice.

We hold that the gravamen of plaintiff's complaint sounds in medical malpractice, plaintiff was required to comply with the notice requirement found in Tenn. Code Ann. §29-26-121(a) (as well as the other requirements found in the medical malpractice statute). Having failed to comply, plaintiff's medical malpractice claims were subject to dismissal, as the Trial Court properly found. We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Melinda Long, the Administrator of the Estate of Opal Hughes.

_____
HERSCHEL PICKENS FRANKS, P.J.