JOHNSON v. ELY. No. 4—205 S. W. (2d) 759.

Eastern Section.    July 9, 1947.

Petition for Certiorari denied by Supreme Court, October 18, 1947.

A. C. Grimm and Jennings, O'Neil & Jarvis, all of Knoxville, for plaintiff in error.

Clyde W. Key, of Knoxville, for defendant in error.

McAMIS, J.   This is a suit for damages based upon the alleged negligence of the defendant, Dr. J. B. Ely, in leaving a needle in plaintiff's abdomen during an operation for appendicitis.   A verdict for defendant was directed at the close of all the evidence and the plaintiff appeals insisting there was material evidence to take the case to the jury.

The plaintiff, a young married woman, consulted the defendant, a competent and skilled surgeon of Knoxville, some months prior to June, 1941, for an infection of the Fallopian tubes, diagnosed by defendant as chronic bilateral salpingitis.   After being treated for this condition she developed symptoms of appendicitis and her appendix was removed by defendant on June 8, 1941. Defendant testified that about a week before the operation she complained of nausea and the pain she had been having moved "higher in the region of the appendix." Plaintiff described her pains just before the operation as "cramping."   She testified that immediately after the operation and until a needle was removed from her abdomen in January, 1946, she suffered "sharp, jabbing pain" in her right side in the region of the incision and that she complained of this condition to defendant repeatedly, but he assured her it was only her imagination and that her condition was satisfactory.   Upon removal of the needle by Dr. Smith in 1946 she experienced no further pain.

The hospital chart and the testimony of other witnesses show that plaintiff suffered intense pain in the region of the incision; that she complained to the nurse in attendance and to the intern at the hospital.   There is testimony that her general condition of health deteriorated following the operation; that she lost weight and be-

came nervous though she had not been so before the operation.

When removed by Dr. Smith the needle was in the right lower quadrant of the pelvis within the peritoneal sac enfolded in the fat of the omentum.

The case both for the plaintiff and for the defendant is based largely if not entirely upon circumstantial evidence. Plaintiff relies upon the circumstance that the location and character of the pain she had previously suffered changed with, or immediately following, the operation, the location of the needle within the peritoneal sac when found by Dr. Smith and the fact that the sharp, jabbing pain persisted until the needle was removed and then ceased immediately and other circumstances as making an issue of fact as to whether the needle was left in her abdomen by defendant or one of his assistants. She offers no direct proof.

The defendant, likewise, offers no direct proof that it was not left in the wound during the operation. He says that the technique used by him in removing the appendix, treating the stub and closing the incision would not call for the use of the needle removed by Dr. Smith which he insists is not a surgical needle but an ordinary sewing needle. His testimony is to the effect that, while it is possible that the needle was dropped into the incision, he has no knowledge that it was. He offers as possible explanations of the presence of the needle in plaintiff's abdomen: (a) That the needle may have been left in a gauze packing prepared by seamstresses at the hospital and used within the incision, (b) that it may have been introduced into the body in a gauze packing by Dr. Spessegger of Charleston, S. C., who did a curettment of the womb in 1943, and migrated to the omentum be-

tween the date of that treatment and the date of removal by Dr. Smith in 1946, (c) that it may have been swallowed during infancy and (d) that it may have entered the body without causing pain (and without plaintiff being conscious of its presence) through the foot or buttocks.

■ The rule is that a surgeon is liable for the negligence of nurses and operating assistants while under his special supervision and control during the operation. Meadows v. Patterson, 21 Tenn. App. 283, 287, 109 S. W. (2d) 417. This is conceded.

■ If, as a matter of fact, the needle entered through the incision during the operation and the wound was closed without removing it the doctrine of res ipsa loquitur applies and, in the absence of a reasonable and satisfactory explanation, the jury may infer negligence. Annotation, 162 A. L. R. 1299; Casenburg v. Lewis, 163 Tenn. 163, 40 S. W. (2d) 1038; Meadows v. Patterson, supra.

But this doctrine cannot serve as a substitute for proof that the needle got into the body during the operation because plaintiff must place the instrumentality under defendant's exclusive control before res ipsa loquitur applies at all. Lewis v. Casenburg, 157 Tenn. 187, 7 S. W. (2d) 808, 60 A. L. R. 254.

■ The doctrine of res ipsa loquitur is not to be confused with circumstantial evidence. Res ipsa loquitur merely raises an inference, from the nature and circumstances of the occurrence causing the injury, that if due care had been exercised by the person in charge of the instrumentality, the casualty would not have occurred. Gill v. Brown, 130 Tenn. 174, 169 S. W. 752. In contrast, circumstantial evidence consists of proving facts and circumstances reasonably leading the mind to conclude

from the facts established that another fact follows as natural and expected or a very probable consequence.

So, as we see it, the questions to be determined are: (1) Did the plaintiff offer evidence of circumstances from which the jury might conclude that the needle entered the patient's body during the operation, (2) If so, are the circumstances offered by defendant sufficient as a matter of law to dissipate the inferences flowing from these circumstances and (3) If not, has the defendant overcome the inferences of negligence with which he is burdened under res ipsa loquitur.

(1) The proof for plaintiff shows that the pain experienced before the operation was a ''cramping'' pain, whereas, immediately after the operation, it was a sharp jabbing pain which would characterize the pain caused by a sharp metal object like a needle; that the same pain persisted until the removal of the needle and immediately ceased; that the seat of the pain after the operation was in the region from which the appendix was removed and there was no bulging or puffing suggestive of an infection; that she lost weight, became nervous and suffered a general deterioration of health after the operation.

The defendant offers in explanation of these circumstances that the pain was caused by the infection of the Fallopian tubes but in this connection we note that Dr. Ely himself testified that bilateral salpingitis would cause pain in both sides and as we understand his testimony pain in the region of the appendix would be higher in the abdomen than pain incident to salpingitis. Dr. Smith testified that salpingitis would not cause a sharp pain such as described by plaintiff after the operation unless the infection of the tubes was in an acute stage. Dr. Ely says he examined the ovaries and tubes during the

operation and found "evidence of an old inflammatory process." This is not suggestive of an acute infection but, to the contrary, that the condition was chronic rather than acute. We think the explanation offered, at most, made an issue for the jury and is not conclusive of the question whether the pain described was caused by the needle.

The defendant also strongly insists that the needle is not one he would have used in the operation; that it is not a surgeon's needle. But, as we have noted, he admits the possibility that the needle may have entered through the incision during the operation. If it got into the wound during the operation it can make no difference what kind of a needle it was on a motion for a directed verdict though, of course, the proof that it was not a surgeon's needle tends to overcome the force of the circumstances relied upon by plaintiff and would be proper for the jury to consider. It does not overcome the force of these circumstances as a matter of law.

The same may be said of all the testimany of defendant and the other surgeons showing in great detail how such an operation is performed and the precautions that are taken to prevent foreign object from being left within the abdomen. This is evidence for the jury but it does not, in our opinion, destroy the circumstantial evidence offered by plaintiff or project the subject of inquiry into the realm of speculation and conjecture, as insisted.

We think the plaintiff did offer evidence from which a jury might conclude that the needle entered the patient's body during the operation and that the first question must be answered in the affirmative.

(2) Is the probative force of these circumstances dissipated by the proof for the defendant?

302

(a) Dr. Copenhaver, a witness for defendant, testified the needle "might have adhered to one of the sponges but I could hardly see how that could be because the sponges are all wet and wrung out . . . ought to be able to find the needle there."

We think the jury might take this testimony as eliminating the probability that the needle was in one of the sponges when brought into the operating room.

(b) Whether the needle entered the abdomen through the packing used by Dr. Speissegger in the curettment of the womb was for the jury in view of plaintiff's testimony that she had the pain both before and after that treatment.

(c), (d) That the needle may have been swallowed in childhood or entered through the skin without causing pain are at most only speculative possibilities.

It is true there is proof that *if* a needle had entered in one of these ways it *might* have migrated to the omentum and lodged there and *might* have been freed during the operation by the manipulations of the surgeon. Under this theory the jury would have to assume without any proof of the fact that, because possible, the needle did as a matter of fact enter the body in one of the ways suggested and assume, also without proof, that it migrated to the field of the operation and was released or disturbed by the operation with the result that it caused the pain described by plaintiff.

When plaintiff established by credible proof circumstances from which a reasonable mind might infer that the needle intered during the operation she was entitled to have her case go to the jury unless defendant by proof offered some explanation which all reasonable minds must agree destroyed the probative force of the

circumstances offered as making out her case. The defendant could not do this conclusively and as a matter of law by offering evidence that it might have happened in some other way, any more than a plaintiff can have a verdict on such evidence. Proof that a thing might occur in a certain way is not proof that it did in fact.

■ It was for the jury to weigh the probabilities in the light of all the proof and determine the weight of the inferences to be reasonably drawn from the circumstances relied upon by plaintiff in the light of the possibilities or probabilities appearing from the proof offered by defendant. Because there were possibilities or even probabilities opposed to the circumstantial evidence in the case did not overcome as a matter of law the force of the circumstantial evidence, and in such a case a verdict based on the whole evidence would not be the product of speculation and conjecture. Law v. Louisville & N. R. Co., 179 Tenn. 687, 170 S. W. (2d) 360.

(3) Assuming, as we have found, that there was circumstantial evidence that the needle entered through the incision and that the explanations and circumstances offered by defendant are not sufficient as a matter of law to dissipate the inferences favorable to plaintiff, did the proof for defendant overcome as a matter of law the inferences of negligence under res ipsa loquitur?

■ In general the weight of an inference to be drawn from the evidence, as well as the explanation offered to meet the inference, is for the determination of the jury. 53 Am. Jur. 160, Trial, Sec. 187.

■ Under res ipsa loquitur when the infereces of negligence which arise under that doctrine are rebutted by opposing evidence, the weight of the inference is for the jury unless uncontradicted explanatory evidence ex-

cludes the inference that the injury resulted from the want of ordinary care. Explanations showing that the injury might have occurred from some other cause not attributable to defendant's negligence is not sufficient to take the case from the jury. Casenburg v. Lewis, 163 Tenn. 163, 40 S. W. (2d) 1038. And see 38 Am. Jur. 1032; Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 122 F. (2d) 271, 136 A. L. R. 789.

We think the proof for defendant is too inconclusive to justify a directed verdict. The proof shows that it was the duty of the nurse to keep track of needles in the operating room and, under Dr. Copenhaver's testimony, if there was a needle in the gauze she could have found it. Though it is not insisted the surgeon could search for needles, he is responsible for the acts of the nurse during the operation. Needles were not counted at the end of the operation and whether the nurse was negligent in not making such a count at the end of the operation would present a question for the jury. Proof that the operation was conducted according to customary and accepted methods and approved technique is not conclusive on the issue of negligence. Nashville C. & St. L. R. Co. v. Wade, 127 Tenn. 154, 153 S. W. 1120, Ann. Cas. 1914B, 1020; Smith v. Fisher, 11 Tenn App. 273.

The assignments directed to the action of the court in directing a verdict are, accordingly, sustained.

Certain of the assignments are directed to the admission of medical testimony as to professional experiences and opinions as to needles being swallowed in childhood or entering the body through the skin without causing pain. We think this evidence was conpetent to the extent it is based upon the general knowledge

of the profession but that evidence of the circumstances of particular cases about which the physician may have heard would not be competent. To the extent indicated these assignments are sustained and, otherwise, over-ruled.

Complaint is also made of the court's action in relaxing the rule against witnesses being in the court room by permitting Drs. Stone, De Sautelle and Copenhaver to testify after reading Dr. Ely's testimony. While we cannot approve this practice we think it was a matter within the discretion of the trial court.

Assignment IV goes to the admission of Dr. Copenhaver's testimony that the only way a surgeon would detect a needle in a sponge "would be for him to just happen to see it . . . or stick his hand on it," etc. We think this evidence was not a proper subject for expert testimony and that it invades the province of the jury. This assignment is sustained.

The result is that the judgment is reversed and the cause remanded for another trial.

Hale and Burnett, JJ., concur.