Doyle L. HOGAN and wife, Virginia Hogan individually and as b/n/f for Jennifer Hogan, a minor, Plaintiffs–Appellees,

v.

Sarah Smith DOYLE, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

July 19, 1988.

Permission to Appeal Denied by Supreme Court Dec. 27, 1988.

Robert W. Sauser and Lawrence M. Hunter, Jr., with Luther, Anderson, Cleary, Ruth & Speed, Chattanooga, for defendant-appellant.

Jerry Farinash and George Koontz, with Kennedy, Fulton & Koontz, and Eron Epstein, with Epstein & Epstein, Chattanooga, for plaintiffs-appellees.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The pivotal issue on this appeal is whether or not the jury included "punitive damages" in its award for personal injuries when that was not an issue on the trial of the case and outside the charge of the court.

The Plaintiffs–Appellees, Doyle Hogan and wife, Virginia Hogan, filed suit individually and as b/n/f for their minor daughter, Jennifer, against the Defendant–Appellant, Sarah Doyle, for personal injuries received in an automobile accident when the Defendant pulled her car in front of the automobile in which the Plaintiffs were riding.

Upon the trial of the case the Defendant admitted liability and the case was submitted to the jury to fix the damages for the Plaintiffs.

None of the parties received serious injuries in the accident nor did they receive medical treatment until some time after the accident except they did take their minor child, Jennifer, who was four months old, to the hospital immediately after the accident to have her checked. Her injuries consisted of minor bruises. Later Virginia was treated for neck, lower back and leg injuries and she incurred approximately $4,000 in doctors' and hospital bills. However, the proof showed she suffered a second injury to her back after the accident as a result of falling down some steps. Also, some time after the accident it was discovered that Doyle had a broken collarbone that would not heal properly. Although he attributed the broken collarbone to the accident, the proof showed he had previously broken the collarbone at the same place in a fall. There was some question as to whether his condition was a result of the first break which failed to heal or there was a new break as the result of the accident. His doctor estimated he sustained a 10% disability to the body as a whole as a result of his injuries and he incurred approximately $3,000 in medical and hospital expenses.

When the jury returned to the courtroom to announce their verdict the following colloquy occurred and is the basis of the appeal:

"(Whereupon, the jury came back with a verdict.)

"THE COURT: Who's the foreperson?

"THE FOREMAN: I am, sir.

"THE COURT: Since this is complicated, I'll go a little slow to ask you what you decided. Has the jury reached a verdict in the case of Hogan vs. Doyle?

"THE FOREMAN: Yes, sir.

"THE COURT: All right. Now, then, we'll take up Doyle Hogan first. Has the jury made an award to Doyle Hogan for personal injuries?

"THE FOREMAN: We have medical expenses.

"THE COURT: Well, have you used that to mean pain and suffering and so forth, all of that?

"THE FOREMAN: Well, the injuries, yes, sir.

"THE COURT: All right. What amount have you got for that figure?

"THE FOREMAN: $4,000.

"THE COURT: Now, for the loss of services of his wife and the medical expense of his daughter, Jennifer, have you given any award for that?

"THE FOREMAN: Yes, sir, one dollar, sir.

"THE COURT: All right. Now, Virginia, the wife, Hogan, what amount for personal injuries?

"THE FOREMAN: Well, now, that's the same thing there under medical expenses.

"THE COURT: Well, all right.

"THE FOREMAN: $5,000.

"THE COURT: All right. What amount for loss of services?

"THE FOREMAN: Well, now, I understand you just wanted two figures.

"THE COURT: Well, no, you have to give some figure for her loss of services. See, the loss of services for Doyle was for the loss of Virginia's services and you awarded a dollar. Now, then, Virginia has also sued for the loss of her husband's services.

"THE FOREMAN: All right. $4,174.

"THE COURT: For loss of services of the husband, then?

"THE FOREMAN: No, that's Virginia. Wasn't that Virginia you asked?

"THE COURT: Yeah, that's what I'm asking you, for Virginia.

"THE FOREMAN: Uh-huh.

"THE COURT: Give me the figure again.

"THE FOREMAN: $4,174.

"THE COURT: Now, then, Jennifer sued for personal injuries.

"THE FOREMAN: Well, now, Jennifer is the child, right?

"THE COURT: Yes.

"THE FOREMAN: Well, we awarded her one dollar.

"THE COURT: All right. Now, I think I've asked you everything. Have you got anything else you want to report now? I'll review this.

"THE FOREMAN: Well, now, the loss of services of Doyle.

"THE COURT: All right. I've got one dollar for that.

"THE FOREMAN: Well, now—

"THE COURT: Let me go back and read what I've got there and everybody listen and see and we'll check it.

"All right. For Doyle and what we call personal injuries, which is more than medical bills, you included all, everything in it is pain and suffering, loss of earnings and medical expenses, you awarded $4,000. For the loss of services of his wife and his child you have one dollar, is the figure I've got.

"THE FOREMAN: That's for Jennifer.

"THE COURT: Well, that's for Jennifer's personal?

"THE FOREMAN: Yeah.

"THE COURT: All right. For the loss of services for Doyle, what have you awarded?

"THE FOREMAN: $5,000.

"THE COURT: All right. Now then we go back over to Virginia. Virginia for her personal injuries including her own medical expenses I have $5,000.

"THE FOREMAN: Right.

"THE COURT: For her loss of services of her husband, Doyle, I have $4,174.

"THE FOREMAN: Yes, sir.

"THE COURT: All right. Now we'll go to Jennifer for her personal injuries one dollar.

"THE FOREMAN: Yes, sir.

"THE COURT: Now, then, I'm going to read this again for you jurors to see if you all agree with what I've got here. You'll have to raise your hand.

"That your verdict is for the Plaintiff, Doyle Hogan for personal injuries $4,000 and loss of services $5,000. For Virginia Hogan personal injuries $5,000, loss of services $4,174. For Jennifer for personal injuries one dollar.

"If that is your verdict and you concur, raise your hand. If you don't, let me hear from you.

"Some of you don't concur.

"JUROR NO. 8: Why don't we show you the list we've got here.

"MR. FARINASH: Your Honor, maybe I can help. I don't know, but—

"THE COURT: No, no, the jury has to do it.

"A JUROR: Punitive damages are in there, Your Honor, and I think he's not told you that. He put it in different steps. We've got three steps broken into.

"THE COURT: He's got three steps instead of two?

"THE FOREMAN: That's what I've got here, Judge.

"THE COURT: All right. Read what you've got here.

"THE FOREMAN: I've got here for Virginia Hogan, pay all medical expenses. That means injuries they incurred in the hospital, whatever.

"THE COURT: Uh-huh.

"THE FOREMAN: $5,000. Loss of services, $4,174.

"THE COURT: All right. Go ahead. Just read me how you've got it.

"THE FOREMAN: All right. Then do you want the punitive damages on there?

"THE COURT: Well, see, you couldn't give any punitive damages and I don't know what you're calling punitive damages.

"THE FOREMAN: All right. Then for Doyle Hogan pay all medical expenses, $4,000. For loss of services, $5,000.

"Then I do have one more thing down here for Doyle, loss of wages for the period he was out of work.

"THE COURT: What did you award that?

"THE FOREMAN: $2880.

"THE COURT: All right. Do you have any other amount to award?

"THE FOREMAN: Then damages for Jennifer, the child.

"THE COURT: And what did you give?

"THE FOREMAN: One dollar.

"THE COURT: Have you all added it up and have a total?

"JUROR NO. 8: You want two total figures, right? One for medical and one for damages?

"THE FOREMAN: Now, if you want the total—

"THE COURT: I was just going to say, I'm going to send you back. You've got to straighten them out and I'm going to send you back to straighten them out. You must report, see, you have separated his loss of earnings and personal injuries. Everything goes up there but what we call consortium of his wife. You put everything up there in one figure. Up there, his personal injuries include pain and suffering, loss of earnings, and the medical expenses, that is one figure for Doyle. Then separately, he has sued for the loss of services of his wife, which includes sex if that's what you're talking about and you award a figure for the loss of services. And he also sued for a bill for Jennifer in that figure.

"So, the way I would say for Doyle now, but I'm going to send you back to do it, that your $2,880 figure has to go back up with his medical expenses and pain and suffering, all of that and his permanent disability, if you found any, all of that in one figure.

"Do you want to say something?

"JUROR: Yes, sir, we have that already figured, we just had it broken down in figures. So, if we can give the figures again that we have.

"THE FOREMAN: $9,174 for Virginia, $6,284 for Doyle.

"THE COURT: All right.

"THE FOREMAN: That's the total thing there.

"THE COURT: All right. I'm going to let you go back out in the jury room and come back. For Doyle I want you to report me two figures. One that you put under

personal injuries and then loss of services of his wife including Jennifer's bill.

"Now, you all have figures there, but see you reported three. And now, you're not bound to anything that you've put up. Again, you can go with these figures down any way you want to.

"Then for Jennifer—Virginia, you only report me two things. One for personal injuries and that includes their medical bills, for pain and suffering, and then any other elements of damages for Virginia. You put that under one figure and then for the loss of services for her husband. And you all have that in two figures already the way I've got it.

"Then for Jennifer then you award her personal injuries and you have that in one figure.

"So you've just got to go back and put— well, again, I ask you to start off, when you go back to the jury room you can do anything you want to. I can't tell you what to do when you get in the jury room, except when you come back I want two figures for Doyle, two for Virginia and one for Jennifer.

"Do you all understand that?

"THE JURY: Yes, sir.

"(Thereupon, the jury retired.)

\*　　\*　　\*　　\*　　\*　　\*

"(Whereupon, the jury comes back with the verdict.)

"THE COURT: All right. Are we all ready again?

"All right. What amount has the jury awarded Doyle Hogan for personal injuries?

"THE FOREMAN: For personal injuries $72,280.

"THE COURT: For loss of services?

"THE FOREMAN: $5,000.

"THE COURT: What amount to Virginia for personal injuries?

"THE FOREMAN: $10,000.

"THE COURT: For loss of services?

"THE FOREMAN: $4,174.

"THE COURT: For Jennifer for personal injuries?

"THE FOREMAN: One Dollar.

The Defendant filed a motion for a new trial or, in the alternative, for a remittitur. The Plaintiffs filed a motion for an additur or, in the alternative, a new trial for Jennifer only. The court overruled the motion for a new trial and the request for an additur for Jennifer. However, he granted the following remittitur. He remitted the judgment for Doyle's personal injuries from $72,280 to $42,280 and his award of $5,000 for loss of consortium to $2,500. He also remitted the award of $5,000 to Virginia for loss of consortium to $1,000.

The Defendant has appealed, saying the court was in error in not granting a new trial or remitting the judgment to the amount of the original awards announced by the jury. With this we agree. The Plaintiffs insist, however, it was error for the court to grant a remittitur.

We have been cited to no cases, nor have we found any either in this jurisdiction or other jurisdictions, in point on the unique issue before us. It is well established in this jurisdiction that

"It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent upon the court to do so." Tennessee Procedure in Law Cases, Section 1504, page 573; *Black v. Nashville Banner Publishing Company,* 24 Tenn.App. 137, 141 S.W.2d 908; *Briscoe v. Allison,* 200 Tenn. 115, 290 S.W.2d 864.

*Templeton v. Quarles,* 52 Tenn.App. 419, 374 S.W.2d 654 (1963) at 660.

In the case of *Johnson v. Ely,* 30 Tenn. App. 294, 205 S.W.2d 759 the court, speaking through Judge McAmis, said, "Where a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a

new trial." In reversing the case, the court went on to say:

> Litigants are entitled to have their rights settled by a consistent and intelligible verdict concurred in by the trial judge and free from the vice of caprice or whim on the part of the jury. The verdicts in these cases seem to have been rendered at random without regard to any rational findings on the evidence and without reference to the charge of the court which was sufficient and clear enough to guide the jury to a proper conclusion if they had followed it.

Id. 205 S.W.2d at 759.

In the case at bar the record is clear that before the jury was sent back to the jury room they had awarded Doyle $4,000 for personal injuries, $5,000 for loss of services of his wife and $2,880 for lost wages. They had awarded Virginia $5,000 for personal injuries and $4,174 for loss of services of her husband and $1.00 to Jennifer for personal injuries. It is also clear that at that point the jury had made an award for an unannounced amount for punitive damages. This was told to the court in the following exchange between the court and jury:

> A JUROR: Punitive damages are in there, Your Honor, and I think he's not told you that. He put it in different steps. We've got three steps broken into.
>
> THE COURT: He's got three steps instead of two?
>
> THE FOREMAN: That's what I've got here, Judge.
>
> \* \* \* \* \* \*
>
> THE COURT: All right. Go ahead. Just read me how you've got it.
>
> THE FOREMAN: All right. Then do you want the punitive damages on there?
>
> THE COURT: Well, see, you couldn't give any punitive damages and I don't know what you're calling punitive damages.

After the exchange quoted above, the court further instructed the jury as follows:

> THE COURT: All right. I'm going to let you go back out in the jury room and come back. For Doyle I want you to report me two figures. One that you put under personal injuries and then loss of services of his wife including Jennifer's bill.
>
> Now, you all have figures there, but see you reported three. And now, you're not bound to anything that you've put up. Again, you can go with these figures down any way you want to.

We think, in light of this exchange between the court and jury, the jury concluded they were not prohibited from awarding punitive damages but they could not make it as a separate award.

The record shows the jury remained in the jury room a very brief period of time prior to announcing their verdict increasing Doyle's personal injury award from $4,000 to $72,280 and Virginia's personal injury award from $5,000 to $10,000. We think, under these circumstances, the only rational conclusion that can be reached is the jury included their punitive damages in the personal injuries to comply with the instructions of the court to report their verdict, not in three, but in "two figures."

In the case of *Alabama Highway Express, Inc. v. Luster*, 51 Tenn.App. 691, 371 S.W.2d 182 (1963) the court, in reversing an inconsistent jury verdict, said:

> It is our considered opinion that both the image and the fact of justice would suffer irreparable harm if we were to validate judgments based on verdicts obviously reached by a jury simply in order to work out its own idea as to what should be done, contrary to the instructions of the trial judge. Even though the results reached approximate the community idea of justice, this is not enough when we know as we do in this case this justice is not based on the law and the facts as found, but the will of the jury.

Id. 371 S.W.2d at 186.

Also, in the case of *Lee v. Melson*, 54 Tenn.App. 53, 387 S.W.2d 838 the court observed: "The guiding principle is fairness to both parties. A verdict tainted

with error or confusion ought not to stand...." Id. 387 S.W.2d at 841.

In the case at bar the court attempted to correct what he obviously considered to be an improper award by suggesting a remittitur. However, we think his remittitur was insufficient. In order to correct the verdict of the jury the remittitur should have reduced the judgment to the amount of the original award of the jury. We, accordingly, modify the judgment to restore the remittitur as to the loss of services and to suggest a remittitur in the award to Doyle for personal injuries to $6,880 including loss of wages, and the judgment of Virginia for personal injuries to $5,000. If the remittitur is not accepted, a new trial will be granted.

The cost of this appeal is taxed to the Appellees and the case is remanded to the trial court for the entry of a judgment in keeping with this opinion.

GODDARD, J., concurs.

FRANKS, J., dissents with opinion.

FRANKS, Judge, dissenting.

The underpinning of the majority opinion is its conclusion there was an "original award of the jury". Clearly, there was no unanimous agreement among the 12 jurors to any factual determination which was accepted by the trial judge as a verdict, which is mandatory in the absence of a stipulation of the parties to accept a majority verdict in accordance with T.R.C.P., Rule 28. *Also see Lovell v. McCullough*, 222 Tenn. 567, 439 S.W.2d 105 (1969).

Essentially, the majority grants an additional remittitur less the amount remitted by the trial court. There is no discussion of the evidence as it relates to the elements of damages and the majority's decision is not responsive to the issues presented for review. Appellant's appeal is predicated on the sole theory of jury misconduct and a new trial was sought.

In my view, there was no original award by the jury, misconduct was not established and assuming misconduct, *arguendo*, the evidence establishes no basis to further reduce the final judgment as established by the trial judge through his powers of remittitur. I would affirm the judgment of the trial court.