**Berdella Vaughn SEAVERS & Eddie Thomas Seavers, Plaintiffs/Appellants,**

v.

**METHODIST MEDICAL CENTER OF OAK RIDGE, Defendant/Appellee.**

Supreme Court of Tennessee, at Knoxville.

Nov. 29, 1999.

Opinion Denying Rehearing Dec. 27, 1999.

Elizabeth Ann Rowland, Knoxville, Janet Edwards, Knoxville, for Appellants.

Robert W. Knolton, Oak Ridge, for Appellee.

R. Sadler Bailey, Philip M. Campbell, R. Hunter Cagle, Trial Lawyers Association, for Amicus Curiae.

## OPINION

WILLIAM M. BARKER, Justice.

We granted this appeal to address whether the doctrine of res ipsa loquitur, as codified at Tennessee Code Annotated section 29–26–115(c), is applicable in medical malpractice cases where the plaintiffs must rely upon expert testimony to prove the elements of causation, standard of care, and that the injury does not ordinarily occur in the absence of negligence. Upon review of Tennessee's medical malpractice law and the authority in other jurisdictions, we conclude that the doctrine of res ipsa loquitur may be applied under those circumstances. The judgments of the lower courts are reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

## BACKGROUND

The appellants, Berdella Vaughn Seavers and Eddie Thomas Seavers,[1] appeal from the intermediate appellate court's decision affirming the entry of summary judgment in favor of the appellee, Methodist Medical Center of Oak Ridge ("medical center"). The basis of appellant's suit is an injury she received to the ulnar nerve in her right arm while she was a patient at the medical center.[2] For the purposes of summary judgment, the parties stipulated to the essential facts in this case.

The appellant was admitted into the medical center on March 1, 1993, after she was diagnosed with bilateral viral pneumonia. At that time, she was able to use her right arm and hand normally and there were no signs of injury to her right ulnar nerve. Three days later, the appellant was transferred to the medical center's intensive care unit (ICU) for treatment of the pneumonia. Treatment included intubation, heavy sedation, intravenous injections, and placement on a respirator. The nurses' notes reflect that the appellant had full use of her left and right extremities at that time, and again, there was no indication that she had any problems or dysfunctions with her right ulnar nerve.

The appellant stayed in the medical center's ICU for approximately one month, during which time, she was heavily sedated and unable to care for herself in any way. In addition, she was unable to talk during most of her stay in the ICU due to an endotracheal tube positioned through her mouth and into her trachea. The ICU nursing staff monitored the appellant and was responsible for turning, positioning, and restraining her body in the hospital bed.

While in the ICU, the nursing staff noted for the first time that the grip in appel-

---

1. Mr. Seavers's claim is for loss of consortium and medical expenses incurred on behalf of his wife, Berdella Seavers. Because his claim is derivative in this case, we will refer to the appellants in the singular. By the use of the term "appellant," we refer only to Ms. Seavers.

2. The ulnar nerve is one of three major nerves located in the arm and hand that provides movement and control of the fingers.

lant's right hand was weaker than in her left hand. Both of her hands had been placed in wrist restraints, fastened to the hospital bed rails, to prevent her from pulling or removing the endotracheal tube and the IV. When the endotracheal tube was removed and the appellant could talk, she complained that her right arm was numb and that she had difficulty using her right hand. She was taken out of the ICU on March 31, 1993, and was moved into a private room at the medical center for further recovery. Dr. James Lynch, a neurologist at the medical center, administered an electromyelogram (EMG) on the appellant approximately one week later. The examination revealed that she had suffered severe damage to her right ulnar nerve.[3]

Based upon the nerve injury, the appellant and her husband filed suit against the medical center for malpractice. The appellant alleged that the medical center's nurses negligently restrained or positioned her arm while she was under their care, resulting in the damage to her right ulnar nerve. She later amended her complaint to include the theory of res ipsa loquitur. Tenn.Code Ann. § 29–26–115(c) (1980).

The medical center filed a motion for summary judgment supported by the affidavits of Dr. Bennett Blumenkopf, a neurosurgeon, and Elizabeth Lewis, a registered nurse who works in general care and intensive care units. Both experts opined that the nerve damage in appellant's right

arm was "of unknown etiology," and that the injury could have developed during her stay in the ICU without any deviation from standards of professional care. In addition, they concluded that the medical center staff had not deviated from the recognized standard of care in treating the appellant, including the manner in which they restrained her arms.

The appellant opposed the medical center's motion for summary judgment arguing that there were genuine issues of material fact. The appellant's response was supported by the deposition of Dr. Stephen Natelson, a neurosurgeon, and the affidavits of both Dr. Natelson and Sharon Woodworth, a registered nurse who works in the ICU at St. Mary's Medical Center in Knoxville. Dr. Natelson had been the appellant's neurologist since 1978, and he treated her right arm after she left the medical center.[4] Dr. Natelson testified in his deposition that the appellant's injury occurred as a result of prolonged pressure on the ulnar nerve in her right elbow. Although he could not offer conclusive proof of causation, he stated that the nerve injury could have occurred if a member of the ICU nursing staff failed to pad appellant's elbow or failed to prevent her arm from becoming pressed against a hard object such as a bed rail.[5]

Both Dr. Natelson and Ms. Woodworth opined that the appellant was under the exclusive control and care of the medical center's nursing staff when the nerve inju-

---

**3.** The appellant was released from the medical center on April 8, 1993, after she recovered from the pneumonia. The discharge report did not reflect her nerve injury. She testified in her deposition, however, that when she left the medical center, she suffered from a variety of problems in her right arm stemming from the nerve damage: hot and cold pains from her elbow to her hand, "claw-like" disfiguration and lack of movement in her hand, and numbness throughout her arm.

**4.** Dr. Natelson has treated the appellant for various ailments, including multiple sclerosis which she was diagnosed with in 1979. Dr. Natelson testified in his deposition that the

appellant's ulnar nerve injury was not caused or related in any way to the multiple sclerosis. There is nothing in the record to suggest otherwise.

**5.** Dr. Natelson's theory was corroborated by the testimony of appellant's husband, Mr. Seavers. He testified in his deposition that he noticed abrasions forming under the appellant's arms while she was confined to the bed in the ICU. He testified that he placed washcloths between her arms and the bed rails to prevent further soars from developing under her arms. He had no knowledge of appellant's arm pain until later when the endotracheal tube was removed from her mouth.

ry occurred. The ICU care included not only direct medical treatment for the appellant's pneumonia, but also the positioning and turning of appellant's body while she was sedated and confined to the hospital bed. Dr. Natelson and Ms. Woodworth stated that when treating ICU patients who are unconscious or under heavy sedation or restraint, the standard of professional care requires the protection of the patients' extremities so that injuries to the ulnar nerves do not occur. Based upon their independent review of appellant's medical records and the EMG results, they opined that the injury was the type which would not have occurred if the nursing staff had upheld the standard of care.

In reviewing the motion for summary judgment, the trial court determined that expert testimony was necessary to establish both the applicable standard of care and whether negligence could be reasonably inferred from the circumstances surrounding the appellant's injury. The trial court, therefore, concluded that the theory of res ipsa loquitur was unavailable and that the appellant's claim was otherwise insufficient as a matter of law. Finding no genuine issues of material fact, the trial court granted the medical center's motion for summary judgment.

A majority of the Court of Appeals affirmed the trial court's order granting summary judgment for the medical center. Relying upon prior decisions from both this Court and the Court of Appeals, the majority of the intermediate court held that res ipsa loquitur did not apply because the appellant's injury was not within the common knowledge of lay persons. *See Poor Sisters of St. Francis v. Long,* 190 Tenn. 434, 230 S.W.2d 659, 662 (1950); *German v. Nichopoulos,* 577 S.W.2d 197, 202–03 (Tenn. Ct. App.1978). The need for expert testimony, according to the majority, was demonstrated by the conflicting evidence on the questions of negligence,

causation, and deviations from the standards of professional care.

Senior Judge William H. Williams wrote separately in a concurring opinion to emphasize that res ipsa loquitur should never apply in medical malpractice cases where, as here, expert testimony is needed to establish both the cause of the injury and that there was a deviation from the applicable standard of care. Judge Williams opined that experts were needed in appellant's case because the causal link between the nerve injury and any negligent act by the medical center's nursing staff was not within the common knowledge of lay persons.[6]

Judge Crawford also wrote separately on the question of res ipsa loquitur. In a brief dissent, he agreed with the limited application of res ipsa loquitur in medical malpractice cases, but stated that the doctrine should apply in appellant's case because the nerve injury was within the common knowledge and understanding of lay persons.

The appellant requests this Court to reverse the Court of Appeals and to remand the case for a trial on the question of negligence. She contends that the doctrine of res ipsa loquitur, as provided in Tennessee Code Annotated section 29–26–115(c), should be extended and made available in medical malpractice cases where expert testimony is necessary to prove the elements of causation and that the injury does not ordinarily occur in the absence of negligence. With the application of res ipsa loquitur, the appellant argues that she has raised a genuine issue of material fact for trial.

## STANDARD OF REVIEW

The standards governing an appellate court's review of a motion for summary judgment are well settled. Summary judgment is appropriate only when the moving party demonstrates that there

**6.** Quoting from *Nichopoulos,* 577 S.W.2d at 202, Judge Williams stated that the issue of

causation in appellant's case was not as plain as " 'a fly floating in a bowl of buttermilk.' "

are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993). We review the summary judgment motion as a question of law in which our inquiry is *de novo* without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.,* 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn.1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Byrd,* 847 S.W.2d at 210–11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. *Robinson,* 952 S.W.2d at 426; *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997).

### DISCUSSION

■ Under Tennessee law, res ipsa loquitur[7] is a form of circumstantial evidence that permits, but does not compel, a jury to infer negligence from the circumstances of an injury. *Poor Sisters of St. Francis,* 230 S.W.2d at 663; *Lewis v. Casenburg,* 157 Tenn. 187, 7 S.W.2d 808, 811 (1928); *Armes v. Hulett,* 843 S.W.2d 427, 432 (Tenn. Ct. App.1992). The doctrine of res ipsa loquitur has traditionally been available in cases where direct evidence of a defendant's negligence is either inaccessible to or unknown by the plaintiff. *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv.,* 217 Tenn. 199, 396 S.W.2d 351, 356 (1965); 57B Am.Jur.2d *Negligence* § 1920 (1989). The doctrine does not dispense with the plaintiff's burden of proof, but it merely allows an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent. *Summit Hill Assoc. v. Knoxville Util. Bd.,* 667 S.W.2d 91, 96 (Tenn. Ct. App.1983); *Oliver v. Union Transfer Co.,* 17 Tenn.App. 694, 71 S.W.2d 478, 480 (1934); 57B Am.Jur.2d *Negligence* § 1920 (1989). The weight of any inference to be drawn from the evidence is for the determination of the jury. *Franklin v. Collins Chapel Connectional Hosp.,* 696 S.W.2d 16, 21 (Tenn. Ct. App.1985); *Johnson v. Ely,* 30 Tenn.App. 294, 205 S.W.2d 759, 762 (1947).

■ The jury may not presume negligence from the fact of an injury alone. Tenn.Code Ann. § 29–26–115(d) (Supp. 1999); *Johnson v. Lawrence,* 720 S.W.2d 50, 56 (Tenn. Ct. App.1986). The plaintiff has the burden of showing circumstances from which the jury might reasonably conclude that the defendant was negligent. *Summit Hill Assoc.,* 667 S.W.2d at 96; *Ely,* 205 S.W.2d at 762. The plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control and that the injury would not ordinarily have occurred in the absence of negligence. *Provident Life & Accident Ins. Co.,* 396 S.W.2d at 354–55; *Sullivan v. Crabtree,* 36 Tenn. App. 469, 473, 258 S.W.2d 782, 784 (1953).

The doctrine of res ipsa loquitur has been applied in a variety of negligence actions,[8] and in the context of medical mal-

---

7. The term "res ipsa loquitur," translated literally from Latin, means "the thing speaks for itself."

8. *See Browder v. Pettigrew,* 541 S.W.2d 402, 407 (Tenn.1976) (applying res ipsa loquitur in a products liability suit brought under a theory of negligence); *Provident Life & Accident Ins. Co.,* 396 S.W.2d at 354–56 (holding that a *prima facie* case was made under res ipsa loquitur where property was destroyed by fire under the defendant's exclusive control); *Coca–Cola Bottling Works v. Sullivan,* 178 Tenn. 405, 158 S.W.2d 721, 725–26 (1942) (holding res ipsa loquitur to apply where plaintiff was injured from a foreign particle found in a bottle of Coca–Cola); *North Memphis Sav. Bank v. Union Bridge & Constr. Co.,* 138 Tenn. 161, 196 S.W. 492, 497 (1917) (permitting the res ipsa inference in a personal injury suit brought by the estates of two deceased employees for a construction accident); *Shivers v. Ramsey,* 937 S.W.2d 945, 948–49 (Tenn. Ct. App.1996) (applying res ipsa loquitur in personal injury case arising from an automobile accident); *Collins Chapel*

practice, has been recognized both by the common law and by our General Assembly. Under the common law, courts have adopted a restricted version of res ipsa loquitur in medical malpractice cases. Claimants have been permitted to use res ipsa loquitur only in those cases where the proof is such that the jury can reasonably infer from common knowledge and experience that the defendant was negligent. *See Poor Sisters of St. Francis,* 230 S.W.2d at 662; *Quinley v. Cocke,* 183 Tenn. 428, 192 S.W.2d 992, 996 (1946); *Nichopoulos,* 577 S.W.2d at 202.

Medical malpractice cases fitting into the "common knowledge" exception typically involve unusual injuries such as a sponge or needle being left in the patient's abdomen following surgery or where the patient's eye is cut during the performance of an appendectomy. *See Nichopoulos,* 577 S.W.2d at 203 (citing *Harrison v. Wilkerson,* 56 Tenn.App. 188, 405 S.W.2d 649 (1966); *Meadows v. Patterson,* 21 Tenn.App. 283, 109 S.W.2d 417 (1937)). Jurors in those cases are permitted to infer negligence based upon a common-sense understanding that such injuries do not ordinarily occur unless the attending physician or health-care provider was somehow negligent. The critical question becomes whether the instrumentality causing the injury was under the defendant's exclusive control when the injury occurred. *Harrison,* 405 S.W.2d at 651; *Meadows,* 109 S.W.2d at 419–20.

▇ In other medical malpractice cases, the doctrine of res ipsa loquitur has been virtually non-existent based upon the fact that most medical claims involve complicated and technical information which is beyond the general knowledge of a lay

jury. *See Baldwin v. Knight,* 569 S.W.2d 450, 456 (Tenn.1978); *Bowman,* 547 S.W.2d at 530–31; *Keeton v. Maury County Hosp.,* 713 S.W.2d 314, 317 (Tenn. Ct. App.1986); *Stokes v. Leung,* 651 S.W.2d 704, 706 (Tenn. Ct. App.1982). Expert testimony is required in medical malpractice cases to assist and to educate the trier of fact unless the alleged malpractice lies within the common knowledge [9] of lay persons. *Baldwin,* 569 S.W.2d at 456. From that standard, it has been the rule in Tennessee that when the subject matter of the alleged malpractice requires a scientific exposition, then the trier of fact has no common knowledge from which to infer negligence. *See Poor Sisters of St. Francis,* 230 S.W.2d at 662; *Nichopoulos,* 577 S.W.2d at 202.

The limited use of res ipsa loquitur in medical malpractice cases has remained the law in Tennessee even with the enactment of the Medical Malpractice Review Board and Claims Act of 1975. Tenn.Code Ann. §§ 29–26–101 to –121 (1980 & Supp. 1999). The Act clarified the common law by requiring all medical malpractice claimants to carry the burden of proving (1) the recognized standard of professional care, (2) that the defendant failed to act in accordance with the applicable standard of care, and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred. *Id.* § 29–26–115(a). If expert testimony is needed to prove or rebut the above elements, the parties must follow subsection –115(b) which states in pertinent part:

> No person in a health care profession requiring licensure under the laws of this State shall be competent to testify

Connectional Hosp., 696 S.W.2d at 20–21 (holding res ipsa loquitur to apply in a wrongful death claim against the defendant nursing home); *Roberts v. Ray,* 45 Tenn.App. 280, 322 S.W.2d 435, 437 (1959) (applying res ipsa loquitur in negligence action where plaintiff's store building was damaged by defendant's automobile); *Crabtree,* 258 S.W.2d at 785–86 (permitting jury to consider a res ipsa inference of negligence where the decedent was

killed in an automobile accident while riding as a passenger).

9. The "common knowledge" standard has been equated to the standard applicable when courts allow res ipsa loquitur in medical malpractice cases. *See Murphy v. Schwartz,* 739 S.W.2d 777, 778–79 (Tenn. Ct. App.1986).

in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.

*Id.* § 29–26–115(b).[10]

Pertaining to the doctrine of res ipsa loquitur, the Act essentially codified the common law. Section –115(c) reads in pertinent part:

In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant. Provided, however, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

*Id.* § 29–26–115(c).

Although the language in section –115(c) does not explicitly adopt the restrictive view of res ipsa loquitur, courts have continued to prohibit the res ipsa inference in medical malpractice cases where expert testimony is needed to assist the trier of fact. *See Ward v. United States,* 838 F.2d 182, 188 (6th Cir.1988) (applying Tennessee law); *Drewry v. County of Obion,* 619 S.W.2d 397, 398 (Tenn. Ct. App.1981); *Nichopoulos,* 577 S.W.2d at 202–03. The appellant acknowledges the restrictive view of res ipsa loquitur, but she requests this Court to reevaluate the existing law and to extend the res ipsa doctrine to medical malpractice cases where expert testimony is required.

The appellant's contention strikes a chord that has divided jurisdictions across this country. In a majority of states which have addressed this issue, medical malpractice claimants are allowed to come forward with expert testimony to support a res ipsa inference. In a minority of states, including Tennessee, negligence may not be inferred in medical malpractice cases where expert testimony is required. Several states also follow this restrictive view. *See Anderson v. Gordon,* 334 So.2d 107, 109 (Fla.Dist.Ct.App.1976); *Kapsch v. Stowers,* 209 Ga.App. 767, 434 S.E.2d 539, 540 (1993); *Le Pelley v. Grefenson,* 101 Idaho 422, 614 P.2d 962, 966 (1980); *Forsmark v. State,* 349 N.W.2d 763, 769 (Iowa 1984); *Orkin v. Holy Cross Hosp. of Silver Spring, Inc.,* 318 Md. 429, 569 A.2d 207, 209 (1990); *Todd v. Eitel Hospital,* 306 Minn. 254, 237 N.W.2d 357, 361–62 (1975); *Larsen v. Zarrett,* 498 N.W.2d 191, 194 (N.D.1993); *Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex.1990).

In contrast, many states permit the joining of expert testimony and res ipsa loquitur in medical malpractice cases. *See Kerr v. Bock,* 5 Cal.3d 321, 95 Cal.Rptr. 788, 486 P.2d 684, 686 (1971); *Medina v. Figuered,* 3 Haw.App. 186, 647 P.2d 292, 294 (1982); *Walker v. Rumer,* 72 Ill.2d 495, 21 Ill.Dec. 362, 381 N.E.2d 689, 691 (1978); *Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 795 P.2d 915, 935–36 (1990); *Cangelosi v. Our Lady of Lake Reg'l Med. Ctr.,* 564 So.2d 654, 664–65 (La.1989); *Edwards v. Boland,* 41 Mass.App.Ct. 375, 670 N.E.2d 404, 406–07 (1996); *Jones v. Porretta,* 428 Mich. 132, 405 N.W.2d 863, 873 (1987); *Buckelew v.*

---

**10.** In an amicus curiae brief, the Tennessee Trial Lawyers Association argues that Tennessee Code Annotated section 29–26–115(a) and –115(b) require the use of expert testimony in all medical malpractice cases. We have carefully reviewed the statute and the existing case law and conclude that there remains a common-knowledge exception to the require-

ment of expert testimony. *See Baldwin,* 569 S.W.2d at 456; *Keeton,* 713 S.W.2d at 317. Under that exception, expert testimony is unnecessary when the subject matter of the malpractice claim lies within the common knowledge of lay persons. *Baldwin,* 569 S.W.2d at 456; *Keeton,* 713 S.W.2d at 317.

*Grossbard,* 87 N.J. 512, 435 A.2d 1150, 1157–58 (1981); *Mireles v. Broderick,* 117 N.M. 445, 872 P.2d 863, 866 (1994); *Kambat v. St. Francis Hosp.,* 89 N.Y.2d 489, 655 N.Y.S.2d 844, 678 N.E.2d 456, 459–60 (1997);[11] *Morgan v. Children's Hosp.,* 18 Ohio St.3d 185, 480 N.E.2d 464, 467 (1985); *Jones v. Harrisburg Polyclinic Hosp.,* 496 Pa. 465, 437 A.2d 1134, 1138 (1981); *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676, 691 (1972); *Van Zee v. Sioux Valley Hosp.,* 315 N.W.2d 489, 492 (S.D.1982); *Pederson v. Dumouchel,* 72 Wash.2d 73, 431 P.2d 973, 979 (1967); *Hoven v. Kelble,* 79 Wis.2d 444, 256 N.W.2d 379, 383 (1977).[12]

The majority approach adopted in these latter cases is supported by the Restatement (Second) of Torts § 328D cmt. d (1965). Under section 328D, an inference of negligence is available both in cases where there is common knowledge concerning the injury and where common knowledge is completely lacking.[13] Comment *d* to the Restatement provides that:

> In the usual case, the basis of past experience from which this conclusion may be drawn is common to the community, and is a matter of general knowledge, which the court recognizes on much the same basis as when it takes judicial notice of facts which everyone knows. It may, however, be supplied by the evidence of the parties; and expert testimony that such an event *usually does not occur without negligence* may afford a sufficient basis for the inference.

> *Such testimony may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which permits laymen reasonably to draw the conclusion.*

Restatement (Second) of Torts § 328D cmt. d (1965) (emphasis added); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 39, at 247 (5th ed.1984) (stating that when a basis of common knowledge is lacking, expert testimony may provide a sufficient foundation for an inference of negligence).

Having carefully reviewed the above authority, we believe that the better rule is to allow expert testimony in medical malpractice cases, where otherwise admissible, to assist the parties both in establishing or rebutting the inference of negligence under a theory of res ipsa loquitur. While we agree that res ipsa loquitur is best suited for cases where the nature of the injury lies within the common knowledge of lay persons, we see no reason to continue to preclude the use of the res ipsa doctrine simply because a claimant's injury is more subtle or complex than the leaving of a sponge or a needle in the patient's body. As recognized by the Restatement and a majority of other jurisdictions, the likelihood of negligence necessary to support a charge under res ipsa loquitur may exist even when there is no fund of common knowledge concerning the nature and circumstances of an injury. *See Connors*

**11.** In New York, the state high court has left open the issue of whether expert testimony may be used to establish the first prong of res ipsa loquitur, *i.e.,* that the injury does not ordinarily occur in the absence of negligence. *See Kambat,* 655 N.Y.S.2d 844, 678 N.E.2d at 459. In that case, however, the court held that the plaintiff made out a claim for res ipsa loquitur based, in part, upon expert testimony which demonstrated the defendant's exclusive control and the absence of any contributory act by the plaintiff. *Id.* at 459–60.

**12.** The District of Columbia also permits the use of res ipsa loquitur in medical malpractice cases where expert testimony is needed to

assist the trier of fact. *See Harris v. Cafritz Mem'l Hosp.,* 364 A.2d 135, 137 (D.C.1976).

**13.** The Restatement lists three requirements that must be met before allowing the res ipsa inference of negligence:

> (a) the event [the harm suffered by the plaintiff] is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) Torts § 328D (1965).

*v. University Assoc. in Obstetrics & Gynecology, Inc.*, 4 F.3d 123, 128 (2d Cir.1993) (applying Vermont law); Restatement (Second) of Torts § 328D cmt. d.

This is especially true in medical malpractice cases where, as here, a claimant suffers a subtle nerve injury while heavily sedated and under the exclusive care of a hospital nursing staff. Claimants often have no knowledge of what happened during the course of medical treatment, aside from the fact that an injury occurred during that time. In cases where the standard of care or the nature of the injury requires the exposition of expert testimony, such testimony may be as probative of the existence of negligence as the common knowledge of lay persons. The use of expert testimony in that regard serves to bridge the gap between the jury's common knowledge and the complex subject matter that is "common" only to experts in a designated field. With the assistance of expert testimony, jurors can be made to understand the higher level of common knowledge and, after assessing the credibility of both the plaintiff's and defendant's experts, can decide whether to infer negligence from the evidence. *See Connors*, 4 F.3d at 128–29.

The restrictive view, on the other hand, overlooks the value of expert testimony in medical malpractice cases and further poses a serious impediment to those medical malpractice claimants who can make out a *prima facie* case under res ipsa loquitur, but for the requirement of expert testimony. As several courts have suggested, the need for expert testimony has become the norm in medical malpractice cases because of new and complex developments in medical science. *See Connors*, 4 F.3d at 128. "If courts refuse to allow experts to testify to what is common knowledge within their fields, then they are not being responsive

to new conditions nor are they keeping abreast of changes in society." *Connors v. University Assoc. in Obstetrics & Gynecology, Inc.*, 769 F.Supp. 578, 585 (D.Vt.1991), *aff'd* 4 F.3d 123, 128 (2d Cir.1993); *see also Jones*, 437 A.2d at 1138–39.

The restrictive view does not accommodate the fact that in most medical malpractice cases, the parties must rely on expert testimony to address the nature of the injuries, causation, and the recognized standards of care. Instead, the restrictive view forces medical malpractice claimants into an "all or nothing" situation wherein they must choose between either relying on lay testimony and the res ipsa doctrine or proving negligence through expert testimony. Moreover, it fails to account for those cases where the patient was unconscious or heavily sedated at the time of injury, and the injury involved a complex medical procedure or otherwise required the exposition of expert testimony. In those cases, the claimants have no choice but to forego the theory of res ipsa loquitur even if they have no means of access to or knowledge of the negligent circumstances.[14]

As noted above, the availability of res ipsa loquitur is often crucial in cases where a patient is injured while unconscious during medical treatment. "In no other way, under usual and ordinary conditions, could the patient obtain redress for such an injury, and it is no hardship upon the defendant to explain, if he alone can, how the injury occurred." *Meadows*, 109 S.W.2d at 419. *See also Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687, 689 (1944); *Jones*, 437 A.2d at 1139; *Dalley v. Utah Valley Reg'l Med. Ctr.*, 791 P.2d 193, 197 (Utah 1990). The same reasoning also applies in cases where the patient is somehow injured by the health-care provider while under a heavy sedative.[15]

---

**14.** This problem also exists in cases where the defendant comes forward with expert testimony to refute the allegations of negligence. In those cases, even if the claimant feels compelled to respond with expert testimony, he or she is forced to choose between the use of experts or res ipsa loquitur.

**15.** In this case, for example, the appellant testified in her deposition that her memory of

In response to the shortcomings of the restrictive view and in keeping with the modern trend in medical malpractice cases, we conclude that expert testimony may be used to establish a *prima facie* case of negligence under res ipsa loquitur. While this decision requires us to overrule prior case law, we find that it is supported by Tennessee's medical malpractice statute. As previously stated, Tennessee Code Annotated section 29–26–115(b) sets forth the qualifications for experts in medical malpractice cases, requiring experts to be "licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and [has] practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred." Section 29–26–115(c) next permits the res ipsa inference of negligence "where it is shown by the proof that the instrumentality causing injury was in the defendant's exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence."

Nothing in the Act suggests that the inference of negligence under section –115(c) is available only where expert testimony is unnecessary. To the contrary, because expert testimony is required in most medical malpractice cases, it is inconsistent with section –115(c) to completely prohibit the application of res ipsa loquitur in those cases.

The remaining question is whether the res ipsa doctrine should be applied in appellant's case to overcome the medical center's motion for summary judgment. Under Tennessee Code Annotated section 29–26–115(c), the appellant was required to demonstrate by a preponderance of the evidence that the instrumentality of the

nerve injury was under the medical center's exclusive control and that the injury would not have ordinarily occurred in the absence of negligence.[16] The parties agree that the appellant was under the exclusive control and care of the medical center when the nerve injury occurred. The record further shows that the appellant's right arm and hand were fully functional when she entered the medical center's ICU and that no problem was detected until the ICU nurses noticed that the grip in her right hand was not as strong as the grip in her left hand. During that time, the appellant was heavily sedated, restrained, and under the complete care of the ICU nurses.

Based upon the EMG results, the appellant has shown that the dysfunction in her right arm resulted from damage to her right ulnar nerve. According to Dr. Natelson, this injury was likely caused by prolonged pressure on the nerve from a hard object such as a bed rail. This theory was corroborated by evidence that the appellant's arms were strapped to the hospital bed during her stay in the ICU. In addition, the appellant's husband testified in his deposition that he noticed abrasion marks under the appellant's arms while she was confined to the bed in the ICU.

Although experts for the medical center testified that the nerve injury was of "unknown etiology," and that there was no deviation from the standard of professional care, this evidence was insufficient as a matter of law to overcome the testimony provided by Dr. Natelson and other witnesses for the appellant. We conclude that the appellant has satisfied the res ipsa requirements under section –115(c) and has raised a genuine issue of material fact on the allegation of negligence. Therefore, summary judgment in favor of the medical center was improper in this case.

any discomfort or problems in the ICU was diminished by the medication she was taking.

16. Whether the appellant relies on lay testimony or the testimony of experts, it is for the court to determine if she has made out a *prima facie* case to support a charge of res ipsa loquitur.

## CONCLUSION

We do not at this time undertake to extend the reasoning of this decision to other cases where a litigant seeks to invoke res ipsa loquitur. We merely hold that the res ipsa doctrine is available in medical malpractice cases to raise an inference of negligence even if expert testimony is necessary to prove causation, the standard of care, and the fact that the injury does not ordinarily occur in the absence of negligence.

Based upon the application of res ipsa loquitur in this case, we conclude that the appellant has raised a genuine issue of material fact. We, therefore, reverse the judgments of the courts below and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Methodist Medical Center of Oak Ridge.

ANDERSON, C.J., and BIRCH, J., concur.

HOLDER, J. and DROWOTA, J., See separate Dissenting Opinion.

JANICE M. HOLDER, Justice, dissenting.

I write separately to dissent because I believe that the doctrine of res ipsa loquitur should be applied in professional malpractice cases only when the nature of the injury is so obvious that common lay knowledge and experience could infer that the injury would not have occurred in the absence of negligence. The nature of the injury should be so simple and clear as not to require a layman to speculate or analyze how the injury might have occurred.

A juror generally does not possess the knowledge necessary to assess whether a physician has been negligent. Some procedures may be so inherently risky that an injury may occur even when the physician is exceedingly careful and does not deviate from the standard of professional care. Our medical malpractice statute, therefore, generally requires expert testimony to explain the standard of care and to opine whether the treating physician has breached that standard of care.

The logical underpinnings for the requirement of expert testimony and for establishing a res ipsa loquitur case are inconsistent. The doctrine of res ipsa loquitur, as the majority has translated, means "the thing speaks for itself." Under the majority's decision, however, the injury or "the thing" no longer needs to speak for itself under a theory of res ipsa loquitur. The injury now speaks for itself through the assistance of medical testimony. This formation of a hybrid res ipsa/expert testimony case allows a jury to speculate as to the *manner* in which an injury may have occurred without the assistance of medical testimony. I, therefore, believe that the two strategies for establishing a medical malpractice case should remain mutually exclusive and that a jury should not be allowed to infer a proposition that generally demands expert proof.

Lastly, the majority's decision has too broad an application. The majority would seemingly permit this hybrid res ipsa strategy whenever a patient was sedated, anesthetized, or unconscious "and the injury involved a complex medical procedure or otherwise required the exposition of expert testimony." Moreover, the hybrid strategy may be invoked in cases such as the case now before us where: an expert is unavailable to explain the manner in which the injury occurred; and the defendant's expert opines that the injury could not have occurred in the absence of negligence.

A plaintiff now need only procure an expert willing to opine that the injury should not have occurred. Such testimony may permit a case to go to the jury even though the expert is unable to testify to a specific standard of care or the manner in which the injury occurred. Thus, the jury is free to speculate as to how the injury

may have occurred. A broad invocation of the hybrid res ipsa/expert testimony strategy could potentially make professionals insurers of "good results." I, therefore, dissent.

I am authorized to state that Justice Drowota joins in this dissenting opinion.

## ORDER DENYING PETITION TO REHEAR

BARKER, Justice.

The appellee, Methodist Medical Center of Oak Ridge, has petitioned this Court for rehearing in this case following release of our opinion on November 29, 1999. Having given the arguments raised in the appellee's petition due consideration, we conclude that the petition is without merit and should be denied.

The appellee argues in its petition to rehear that our opinion is in conflict with *Kennedy v. Holder*, 1 S.W.3d 670 (Tenn. Ct.App.1999), *perm. to appeal denied*, Sept. 13, 1999. To the contrary, we agree with the essential holding of *Kennedy* that where expert testimony is required in medical malpractice cases, a defendant who refutes the plaintiff's allegations with expert testimony is entitled to summary judgment when the plaintiff produces no rebuttal proof by expert testimony.

We disagree with *Kennedy*, however, to the extent that it denies plaintiffs an opportunity to use res ipsa loquitur to survive summary judgment in cases requiring expert testimony. With our opinion in this case, res ipsa loquitur is no longer confined in Tennessee to the realm of cases within the "common knowledge" of the jurors. Instead, res ipsa loquitur may be used in combination with expert testimony to raise an inference of negligence, even in those cases where expert testimony is required. Nevertheless, because the *Kennedy* plaintiff failed to introduce required expert testimony to establish a *prima facie* case of negligence even under res ipsa loquitur, the Court of Appeals was correct in affirming the grant of summary judgment to the defendants.

Justices Holder and Drowota adhere to the views expressed in their original dissenting opinion previously filed in this case.

It is therefore ORDERED that the appellee's petition to rehear be, and is hereby denied.