IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2019 Session

## ESTATE OF HERBERT ROSS SHELTON v. GREENEVILLE URGENT CARE AND OCCUPATIONAL MEDICINE CLINIC, ET AL.

**Appeal from the Circuit Court for Greene County**
**No. 14CV317TJW     Thomas J. Wright, Judge**

_____

### No. E2018-00862-COA-R3-CV

_____

The Estate of Herbert Ross Shelton ("Plaintiff")[1] appeals the judgment of the Circuit Court for Greene County ("the Trial Court") granting summary judgment to Greeneville Urgent Care and Occupational Medicine Clinic and Takoma Regional Hospital in this healthcare liability action after finding and holding that Plaintiff's sole expert witness was not qualified to testify in this case. We find and hold that Plaintiff's expert did not practice in a profession or specialty during the relevant time period which would make his testimony relevant to the issues in this case, and thus, was not qualified to testify pursuant to Tenn. Code Ann. § 29-26-115. We, therefore, affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and RICHARD H. DINKINS, JJ., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellant, the Estate of Herbert Ross Shelton, by Executor Jeffrey A. Cobble.

Heidi A. Barcus and Hillary B. Jones, Knoxville, Tennessee, for the appellees, Greeneville Urgent Care and Occupational Medicine Clinic and Takoma Regional Hospital.

_____

[1] Mr. Shelton died during the pendency of this suit and his estate was substituted as the party plaintiff. For ease of reading only, we use the term 'Plaintiff' in this Opinion when referring to Mr. Shelton and also when referring to his estate.

# OPINION

## Background

In April of 2013, Plaintiff presented to Greeneville Urgent Care and Occupational Medicine Clinic ("the Clinic") seeking pain medication. Plaintiff previously had been a patient at the Clinic. Allegedly, medical assistant Carole Hayes ("Hayes") was alone in an examination room with Plaintiff, and she instructed Plaintiff to get on the examination table. Plaintiff told Hayes that he could not, and she insisted that she needed for him to get on the examination table in order to take his blood pressure. Plaintiff tried to step up on a stool, and allegedly the stool slipped or moved causing Plaintiff to lose his balance and fall. Plaintiff alleged that he struck the wall of the examination room and came to rest on his buttocks on the concrete floor. Allegedly, Hayes and Judy Seaton ("Seaton"), a licensed practical nurse ("LPN"), assisted Plaintiff in rising from the floor and sitting in a chair. Hayes disputes that Plaintiff suffered a fall. She testified that as Plaintiff went down she held him, and he sort of slid down her leg. Seaton, who was outside of the room, testified that she heard a noise, and she found Plaintiff sitting on the examination table when she entered the exam room. Seaton stated that Hayes told her what had happened, but Seaton could not remember what Hayes told her. No fall was documented in the medical records.

After the alleged fall, Plaintiff was seen by nurse practitioner Marsha Montemarano ("Montemarano") who arranged for Plaintiff to be transported by wheelchair to the adjacent Takoma Regional Hospital ("the Hospital"). X-rays were taken, and Plaintiff was sent home despite his complaints of pain. The next day, Plaintiff received a telephone call from someone at the Hospital advising that they were sending an ambulance to pick Plaintiff up to take him to the Hospital because the x-rays showed that Plaintiff had broken his back. Plaintiff then underwent surgery and physical therapy.

Plaintiff filed suit against the Clinic and the Hospital ("collectively Defendants") alleging, in part, that the stool was dangerous, that despite knowing of Plaintiff's physical handicaps the Clinic staff insisted that he mount the examination table without assistance, that the Clinic failed to document the fall in his medical records suggesting a cover-up of negligence, and that the Hospital failed to promptly diagnose and treat his injuries. Defendants filed motions for summary judgment supported, in part, by expert affidavits. As pertinent to this appeal, Defendants filed a motion for summary judgment seeking to disqualify Plaintiff's expert, Edward S. Kaplan, M.D.

After a hearing, the Trial Court entered its order on August 9, 2017, granting summary judgment on all of the healthcare liability claims after finding and holding, *inter alia*, that Plaintiff failed to show that any of the alleged acts of Hayes, Seaton, or

Montemarano caused or contributed to his injuries, that Plaintiff failed to submit evidence showing that his expert, Dr. Kaplan, was familiar with the standard of care for nurse practitioners, LPNs, or medical assistants in an urgent care setting, that Plaintiff failed to demonstrate that Dr. Kaplan practiced in a similar specialty during the year preceding April 2013 when the alleged fall occurred, that Plaintiff had failed to show that Dr. Kaplan was familiar with the standard of care for emergency room physicians, and that Dr. Kaplan while having impressive credentials had retired as a practicing neurosurgeon in 2001 and did only occasional neurology consultations and volunteer work at a non-profit clinic during the year preceding April of 2013. The Trial Court allowed the premises liability claim against the Clinic with regard to the allegedly defective stool to continue.

Plaintiff filed a motion to reconsider judgment with regard to the motion for summary judgment to exclude Dr. Kaplan's testimony. Plaintiff also filed a motion to alter or amend. The Trial Court treated both motions as Tenn. R. Civ. P. 59.04 motions to alter or amend and denied them reiterating that Dr. Kaplan was incompetent to testify about the standard of care for medical assistants and LPNs in an urgent care setting and incompetent to testify because he had not practiced during the relevant time period. The Trial Court also addressed the argument that Plaintiff did not need a standard of care expert pursuant to *res ipsa loquitur* finding that an expert would be needed to explain how a medical assistant should have responded to assisting Plaintiff and that an expert would be needed on the issue of what should and should not have been documented in the chart.

The Trial Court then addressed the motion for summary judgment with regard to the allegedly defective stool. Defendants filed the affidavit of Montemarano stating that the stool was not defective as evidenced by other patients who had used it on the day of the alleged fall and that nothing had happened to the stool to render it defective before Plaintiff was seen or during the time when Plaintiff was seen. Plaintiff responded and pointed to his own deposition testimony stating that the stool was defective.

After a hearing, the Trial Court entered its order on January 19, 2018 finding and holding that Plaintiff had failed to produce any evidence of negligence and failed to produce evidence that Defendants had any actual or constructive notice that the stool was defective. The Trial Court dismissed the premises liability claim.

Plaintiff filed another motion to alter or amend or for additional findings of fact alleging that when the Trial Court made its finding that Dr. Kaplan had not practiced during the relevant time period it had not addressed the fact that Dr. Kaplan was in the business of performing independent medical examinations and testifying as an expert witness.

3

After a hearing on Plaintiff's motion, the Trial Court denied the motion to alter or amend or to make additional findings of fact finding and holding: "Dr. Kaplan testified that he was engaged in providing expert testimony and medical advisory services for plaintiffs and defendants during the year preceding the incident in this case but the undersigned, assuming this to be true, does not find this to be evidence that he practiced medicine in any legally relevant capacity in the year preceding April 2013." Plaintiff appeals to this Court.

## **Discussion**

Although not stated exactly as such, Plaintiff raises eight issues on appeal: 1) whether the Trial Court erred in hearing Defendants' motions for summary judgment when the statement of material facts was filed less than thirty days prior to the hearing; 2) whether a licensed neurosurgeon who examines patients, assists patients on to examination tables, and keeps his own records is competent to testify as to the standard of care of a LPN; 3) whether a licensed neurosurgeon who examines patients, assists patients on to examination tables, and keeps his own records is competent to testify as to the standard of care of a medical assistant; 4) whether being available for hire to perform independent medical examinations qualifies as practicing pursuant to Tenn. Code Ann. § 29-26-115 regardless of the fact that no independent medical examinations were performed during the relevant one year period; 5) whether performing any portion of an independent medical examination qualifies as practicing pursuant to Tenn. Code Ann. § 29-26-115; 6) whether volunteer work at a community clinic qualifies as practicing pursuant to Tenn. Code Ann. § 29-26-115; 7) whether any combination of the actions described in issues 4 through 6 qualify as practicing pursuant to Tenn. Code Ann. § 29-26-115; and, 8) whether the issues in this case require expert opinion or are governed by *res ipsa loquitur*. Defendants raise a separate issue, which we restate as: whether this Court lacks jurisdiction over the appeal because Plaintiff allegedly failed to file a timely notice of appeal due to his filing of serial post-judgment motions in violation of Tenn. R. Civ. P. 59.01.

We first will address Defendants' issue regarding whether this Court lacks jurisdiction over the appeal because Plaintiff allegedly failed to file a timely notice of appeal due to his filing of serial post-judgment motions in violation of Tenn. R. Civ. P. 59.01. As pertinent, Tenn. R. Civ. P. 59.01 provides:

> **59.01. Motions Included.** – Motions to which this rule is applicable are: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under

Rule 59.04 to alter or amend the judgment. These motions are the only motions contemplated in these rules for extending the time for taking steps in the regular appellate process. Motions to reconsider any of these motions are not authorized and will not operate to extend the time for appellate proceedings.

Tenn. R. Civ. P. 59.01.

The Trial Court treated the two motions filed by Plaintiff after entry of the order granting summary judgment to Defendants on the healthcare liability claims as Tenn. R. Civ. P. 59.04 motions to alter or amend and denied the motions. Defendants argue that because of this, the motion to alter or amend or for additional findings of fact filed by Plaintiff after entry of the January 19, 2018 order granting summary judgment on the premises liability claim was actually a motion to reconsider the earlier motions, which is disallowed pursuant to Tenn. R. Civ. P. 59.01.

A careful and thorough review of the record on appeal reveals that Plaintiff did indeed file more than one motion pursuant to Tenn. R. Civ. P. 59. Only one of these motions, however, was filed after entry of the final order, *i.e.*, the January 19, 2018 order granting summary judgment on the premises liability claim with regard to the allegedly defective stool. Rule 54.02 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> **54.02. Multiple Claims for Relief – Motion to Intervene. –** (1) When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

The Trial Court did not direct entry of a final judgment pursuant to Rule 54.02 when it granted summary judgment on the healthcare liability claims. As such, the August 9, 2017 order was not a final order. The final order in this case was the Trial Court's January 19, 2018 order granting summary judgment on the premises liability

claim, which fully and finally disposed of all remaining issues in the case. Plaintiff filed only one motion pursuant to Tenn. R. Civ. P. 59.01 after entry of this order. As such, we do not find that Plaintiff filed serial post-judgment motions, nor do we find that Plaintiff failed to timely file a notice of appeal. This issue is without merit.

We turn now to the issues raised by Plaintiff. Of these issues, we first consider whether the Trial Court erred in hearing Defendants' motions for summary judgment when the statement of material facts was filed less than thirty days prior to the hearing. In his brief on appeal, Plaintiff states that Defendants filed their statement of material facts less than thirty days prior to the hearing on the motions for summary judgment and argues that because of this alleged violation of Tenn. R. Civ. P. 56 the hearing should have been continued. In support of this argument, Plaintiff points to the transcript of the hearing on the motions for summary judgment wherein he alleges that he attempted to bring this alleged error to the Trial Court's attention.

A review of the page cited by Plaintiff shows that at the very end of the arguments, Plaintiff attempted to point out something to the Trial Court and was correctly told that Defendants were entitled to the last word as it was their motion and that argument was concluded. It is not clear from this exchange what point Plaintiff was attempting to raise, but it is clear that he waited until the very last minute to attempt to raise it. Nowhere within the record on appeal does it show that Plaintiff ever timely requested a continuance of the hearing because the statement of material facts was filed less than thirty days prior to the hearing. Plaintiff claims that he should have been allowed additional time to respond to the motions for summary judgment, but he makes no showing that he requested additional time at an appropriate point during the proceedings. As Plaintiff failed to properly request a continuance of the hearing on the motions for summary judgment, this issue is without merit.

We next address Plaintiff's second and third issues regarding whether a licensed neurosurgeon who examines patients, assists patients on to examination tables, and keeps his own records is competent to testify as to the standard of care of either a LPN or a medical assistant. The issue Plaintiff is attempting to raise is whether the Trial Court erred in finding that Plaintiff's expert Dr. Kaplan was not qualified to testify pursuant to Tenn. Code Ann. § 29-26-115, which provides, in pertinent part:

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one

(1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b) (2012). Specifically, Plaintiff is contesting the Trial Court's finding that Plaintiff had "failed to demonstrate that, in the year preceding April 2013; Dr. Kaplan practiced in a similar specialty to render an opinion about the standard of acceptable professional practice governing Nurse Practitioner Montemarano, Nurse Seaton, or Medical Assistant Hayes."

Plaintiff points to Dr. Kaplan's testimony wherein Dr. Kaplan testified he is not trained as a LPN or certified as a LPN but stated: "But I have dealt with LPN and the ser - - LPNs and the services they provide. I've dealt with nurse practitioners and the services they provide. And I know better than most people what to expect of the quality of care and the service provided." Plaintiff then correctly focuses on the fact that our Supreme Court has noted that an expert witness need not practice the same specialty as the defendant as long as the expert witness is sufficiently familiar with the standard of care at issue and otherwise is qualified. *Cox v. M.A. Primary and Urgent Care Clinic*, 313 S.W.3d 240, 260 n.24 (Tenn. 2010). Plaintiff, however, overlooks the fact that Dr. Kaplan then testified that he had not worked with LPNs or nurse practitioners in an urgent care setting during the relevant time period. Dr. Kaplan testified that he did "interact" with LPNs and nursing assistants during his work at the Church Health Center. When questioned further about his work at the Church Health Center, Dr. Kaplan testified: "I was rendering - - rendering neurological and neurosurgical opinions for patients who came to that center because they were sort of caught in a financial gap or insurance gap where they really didn't have coverage."

Dr. Kaplan testified that he is a "neurosurgeon consultant." When asked what a neurosurgeon was, he stated:

A neurosurgeon is a physician who takes care of patients with diseases of the central nervous system, peripheral nervous system, pituitary glands, narrowing of the arteries in the neck, fractures when accompanied by neurological problems, soft tissue injuries in the region of peripheral nerves, head injuries. Those are the major topics that we deal with.

Dr. Kaplan testified that he sees patients and he "advise[s] them what they need to do with regard to their neurosurgical and sometimes neurological problems."

Dr. Kaplan was asked if he had been retired from the clinical practice of medicine for over fifteen years, and he stated:

> From the performance of neurosurgery for 15 years. I have consulted at the Church Health Center.
>
> I get and have received innumerable calls over the years from doctors concerned about their condition which would be neurosurgical, and I have advised them. The same holds true for friends, relatives, old patients, et cetera.

Dr. Kaplan then was asked if that was the extent of his practice of medicine, and he stated: "That - - I think you've covered it."

Dr. Kaplan stated that he was familiar with urgent care facilities because he had taken his wife to one several times. He was asked how he was familiar with the standard of care for urgent care physicians in Greene County, and Dr. Kaplan stated that urgent care facilities in Greene County would be similar to urgent care facilities that he has seen in Memphis. He then stated:

> Well, I've been to urgent care facilities. I've taken my wife there several times. And some of the facilities that I've been involved with over the years were like an urgent care center in a either home for the disabled or assisted living type situation. Those are very similar I've seen to urgent care centers.
>
> But I have seen urgent care centers in Collierville, in Memphis and probably - - probably others. I would think maybe during some of my visits to areas where people would refer in to us, we would pass through their facilities which were basically urgent care centers.
>
> But I was not involved there. I was not employed there. I may have received referrals from those places.

Dr. Kaplan then was asked how the nursing homes and homes for the disabled were similar to the urgent care center involved in this case, and he stated: "Well, they have examining rooms. Many times, the examining rooms are staffed by nurses, nurses' assistants, nurse practitioners." When asked if that was the extent of the similarities, Dr. Kaplan stated: "Yes. I think those are - - I think those are similar." He also stated that when he visited his family practitioner as a patient that he "would see the way that they managed the situation. And it seemed very similar to urgent care; although, they were

not as prepared for emergencies as at an urgent care center." Dr. Kaplan reiterated that he was familiar with urgent care by virtue of taking his wife, a friend, or a neighbor there and further stated: "So I am familiar with urgent care facilities to some degree." Dr. Kaplan admitted, however: "I have not worked in an urgent care center. The closest that I've come to that would be the Church Health Center. It's similar in ways, but it's not urgent care. Those persons who come to the Church Health Center don't frequently have emergencies. They are not urgent patients."

In essence, Plaintiff asserts in his brief on appeal that because Dr. Kaplan himself examines patients his opinions about patient safety in an examination room and charting entries in a medical record are relevant. We, as did the Trial Court, disagree. If this were the case then any provider who examined patients in any examination room would be competent to testify in this case, an outcome which clearly does not comport with Tenn. Code Ann. § 29-26-115(b). Dr. Kaplan's experience is in the area of neurological and neurosurgical work. He admittedly has no experience in the urgent care setting either in practicing urgent care medicine or in supervising LPNs, medical assistants, or nurse practitioners who practice urgent care medicine.

Furthermore, Dr. Kaplan lacks familiarity with the standard of care of professionals working in an urgent care facility. He testified that his understanding of this standard comes from being a patient at an urgent care facility and from taking his wife and friends to urgent care facilities. Dr. Kaplan attempted to show that urgent care facilities were similar to nursing homes or homes for the disabled, with which he claimed to have some familiarity. The only similarities he was able to articulate, however, were that all of these facilities have examining rooms that often are staffed by nurses, nursing assistants, or nurse practitioners. Many other types of medical facilities also share these similarities. These similarities are wholly insufficient to establish Dr. Kaplan's familiarity with the standard of care of professionals working in an urgent care facility. Plaintiff failed to show that Dr. Kaplan's profession of rendering neurological and neurosurgical opinions is sufficiently similar to the profession of either a LPN, a medical assistant, or a nurse practitioner working in an urgent care setting to make Dr. Kaplan's testimony relevant to the issues in this case.

Although Plaintiff does not raise a specific issue regarding whether Dr. Kaplan was qualified to testify as to the standard of care of an emergency room physician[2], we note that the Trial Court correctly held:

> At oral argument, the Court held that Dr. Kaplan was incompetent to testify about the actions of Dr. Boggs because Dr. Kaplan could not opine

---

[2] The Hospital's liability in this case, if any, would arise out of the actions or omissions of its emergency room physician, Dr. Boggs.

about the standard of acceptable professional practice governing emergency-room physicians in Greene County, Tennessee since he neither specialized in emergency-room care nor did he practice emergency-room care or similar specialty in the year preceding April 2013; although Dr. Kaplan listed numerous medical facilities that he has been affiliated with in his affidavit and CV, he failed to demonstrate any evidence that he practiced in the same or similar specialty as Dr. Boggs in the year preceding April 2013. Dr. Kaplan, though possessing exemplary and impressive credentials, retire[d] as a practicing nuerosurgeon [sic] in 2001 and did only occasional nuerology [sic] consultations as a volunteer at a non-profit clinic in the year preceding this incident. So too, Dr. Kaplan failed to come forward with evidence demonstrating how he was familiar with the standard of acceptable professional practice governing emergency-room physicians in Greene County, Tennessee.

We agree with the Trial Court that Plaintiff failed to show that Dr. Kaplan practiced in the same or a similar specialty as the emergency-room physician in the year preceding April 2013. We also agree that Plaintiff failed to show evidence that Dr. Kaplan was familiar with the standard of acceptable professional practice governing emergency-room physicians in Greene County, Tennessee. As such, Dr. Kaplan was not qualified to testify about the actions or omissions of the emergency-room physician in this case.

Plaintiff's fourth, fifth, sixth, and seventh issues all concern whether the Trial Court erred in finding that Dr. Kaplan did not practice during the relevant one year period prior to the incident alleged in this case. Specifically, in its April 19, 2018 order the Trial Court amended its prior order to add the following finding:

Dr. Kaplan testified that he was engaged in providing expert testimony and medical advisory services for plaintiffs and defendants during the year preceding the incident in this case but the undersigned, assuming this to be true, does not find this to be evidence that he practiced medicine in any legally relevant capacity in the year preceding April 2013.

Although providing expert testimony does not qualify as practicing medicine, we find that Dr. Kaplan did practice medicine during the relevant time period. Specifically, Dr. Kaplan's work at the Church Health Center, although unpaid, qualifies as practicing medicine. This practice, however, as discussed more fully above, was not in a profession or specialty that would make Dr. Kaplan's testimony relevant to the issues in the instant case. We need not consider whether the other alleged actions on the part of Dr. Kaplan constituted practicing during the relevant time period as we already have determined that

10

Dr. Kaplan did practice during the relevant time period. The fact that Dr. Kaplan may have practiced as a "neurosurgeon consultant" during the relevant time period, however, is immaterial to the case now before us on appeal.

Finally, we consider whether the issues in this case require expert opinion or are governed by *res ipsa loquitur*. As this Court explained in *Gilreath v. Chattanooga-Hamilton Cty. Hosp. Auth.*:

> Historically, res ipsa loquitur, defined, in pertinent part, by Black's Law Dictionary, 10th ed., as "the thing speaks for itself," was reserved for cases where the act was so obviously negligent that a layperson's common knowledge allowed an inference of negligence. *German v. Nichopoulos*, 577 S.W.2d 197, 202 (Tenn. Ct. App. 1978), *overruled by Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86 (Tenn. 1999). Our Supreme Court later expanded the reach of the doctrine to include cases that concern complex medical issues that are beyond the layperson's general understanding and that require expert testimony to prove causation, the standard of care, and/or that the injury does not ordinarily occur in the absence of negligence. *Seavers*, 9 S.W.3d at 97. Application of the doctrine is precluded in cases where evidence of a specific act of negligence is introduced at trial. *Hughes v. Hastings*, 469 S.W.2d 378, 397 (Tenn.1971).

*Gilreath v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. E2015–02058–COA–R3–CV, 2016 WL 3435788, at \*8 (Tenn. Ct. App. June 15, 2016), *no appl. perm. appeal filed.* As pertinent, Tenn. Code Ann. § 29-26-115 provides:

> (c) In a health care liability action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, that there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

Tenn. Code Ann. § 29-26-115(c) (2012).

In his brief on appeal Plaintiff asserts that there were only two people in the examination room at the time of the incident, Plaintiff and Hayes, and that Hayes "controlled both the conduct of [Plaintiff] and the use of the examination table." Plaintiff also asserts that the issues in this case fall within acts of negligence so obvious that they

are within the common knowledge of laymen. In his reply brief on appeal, Plaintiff asserts that because no entry of Plaintiff's fall was made in the medical record, "[Plaintiff's] fall must rely upon circumstantial evidence.

Defendants assert in their brief on appeal that *res ipsa loquitur* has traditionally been used in cases "where direct evidence of a defendant's negligence is either inaccessible to or unknown by the plaintiff," such as when an unconscious plaintiff is injured during medical treatment. Defendants argue that Plaintiff was conscious and alert when the alleged injury occurred and that he specifically described the incident in detail, and therefore, *res ipsa loquitur* should not apply to this case.

Defendants further assert that the 'instrumentality' that caused Plaintiff's alleged injury was not the examination table or a footstool, but instead was Plaintiff's "own slipping and falling, under his own power," and because of this, Defendants "cannot be construed as having exclusive control of [Plaintiff's] walking, of his own volition, toward the examination table." Defendants point to the evidence that Plaintiff walked down the hallway to the examination room "fine," that he did not need assistance walking, and that he had no trouble stepping up on to a scale. Defendants also argue that even if the footstool were considered to be the 'instrumentality' causing injury, according to Plaintiff's complaint when he used the footstool to mount the examination table the stool slipped from under his foot, causing him to fall. Defendants argue that his shows that Plaintiff "alone controlled the alleged footstool . . . ."

We do not find the case now before us on appeal to be the type of case where *res ipsa loquitur* applies. Plaintiff failed to show that the 'instrumentality' that caused his alleged fall was in Defendants' exclusive control. He further failed to show that his alleged injury was one which ordinarily doesn't occur in the absence of negligence. Furthermore, it is beyond the common knowledge of laypersons what actions on the part of Hayes were required to meet the standard of care required of a medical assistant in a situation such as the one at issue in this case.

Having found no error, we affirm the Trial Court's grant of summary judgment to Defendants.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, the Estate of Herbert Ross Shelton.

_____
D. MICHAEL SWINEY, CHIEF JUDGE